687 So.2d 499 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Trivial BATISTE, Defendant-Appellant.
No. 96-0526.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*500 Glennon P. Everett, Asst. Dist. Atty., Michael Harson, Lafayette, for State.
G. Paul Marx, Lafayette, for Trivial Batiste.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
GREMILLION, Judge.
Defendant, Trivial Batiste, had several bills of information filed against him for various *501 crimes. These crimes were charged under different docket numbers and filed on different dates. On September 11, 1995, the district attorney's office chose to bring the instant charge, possession of a firearm by a felon, to trial. During the two years prior to the trial date, defendant had been before the court numerous times on this as well as the other docketed charges. During those times, defendant appeared without counsel, refused appointed counsel, and repeatedly told the court that he was going to retain his own counsel. At the September 11, 1995 proceeding, the trial judge ordered defendant to be prepared to go to trial the next day on the instant charge. This required defendant to either secure his own counsel, utilize the indigent defender, or represent himself.
Defendant chose to represent himself and a jury trial was held on September 12, 1995. A unanimous jury found that defendant was guilty as charged. On September 14, 1995, the trial court sentenced defendant to ten years at hard labor without benefit of parole, probation, or suspension of sentence. We affirm defendant's conviction and sentence.

FACTS
The Rayne City Police were called to defendant's cousin's house on May 22, 1995. The police arrived on the scene to find defendant trying to take a couch from the house. The police questioned defendant and asked him to leave the scene, but he refused. The police eventually had to arrest and restrain him. In doing so, they performed a necessary pat-down of defendant before putting him in the patrol car. The pat-down search yielded a concealed firearm.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE
These assignments of error will be considered together because they each concern defendant's right to counsel. Defendant argues that the trial court erred: (1) by forcing him to go to trial without counsel; (2) in imposing the sanction of proceeding to trial without allowing him to secure an attorney of his choice; and (3) by failing to inquire whether the attorney appointed for defendant had prepared for the trial or merely negotiated for a plea. We will consider these assignments of error together.
A criminal defendant is guaranteed the right to counsel in the Louisiana Constitution and the United States Constitution. La. Const. art. I, § 13, U.S. Const. amend. VI. The sixth amendment of the United States Constitution mandates the constitutional right to the assistance of counsel at every critical stage of the proceedings unless waived by the defendant. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). Unless a knowing and voluntary waiver of the right to counsel is obtained, a criminal defendant cannot be imprisoned unless represented by counsel at trial. State v. Smith, 479 So.2d 1062 (La.App. 3 Cir.1985), citing Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). This court has held that the right to counsel is a fundamental right given to defendants by our legal system; in fact, it is so integral that it is not subject to a harmless error analysis. State v. Dupas, 94-1264 (La.App. 3 Cir. 3/6/96); 670 So.2d 667. However, defendant's constitutional right to counsel of his choice cannot be utilized as an obstructive tactic to delay the court proceedings or to interfere with the fair administration of justice. State v. Champion, 412 So.2d 1048 (La.1982); State v. Simms, 505 So.2d 981 (La.App. 3 Cir.1987). Defendant must exercise his constitutional right at a reasonable time, in a reasonable manner, and at an appropriate stage in the criminal justice system. Champion, 412 So.2d 1048, citing State v. Lee, 364 So.2d 1024 (La.1978).
At issue in this case is whether or not defendant's actions constituted a valid waiver of his constitutional right to counsel. This problem is confounded due to the proceedings held in the other docketed charges brought against defendant. Because defendant claims he was not afforded an opportunity to retain counsel of his choice, we elect to review the court minutes of those proceedings in order to have a complete picture of the entire procedural history of this case. This requires us to review evidence which may be technically "outside the record" of the instant case. The court minutes show the numerous times in which defendant was *502 in court and allowed the opportunity to retain counsel or to have an attorney appointed for him. It also shows that he never appeared with retained counsel at any of those proceedings.
Defendant was in court on November 10, 1993, for arraignment on docket number 48249, on a charge of possession of stolen things. At that time, the minutes reflect that he was accompanied by counsel from the Indigent Defender Board and that he was referred to the IDB for appointment of counsel. On February 23, 1994, defendant was before the court for arraignment on docket numbers 48555 and 48556, on charges of distribution of crack cocaine. He entered a plea of not guilty through an IDB attorney and informed the court that he would retain his own counsel. On June 20, 1994, defendant's cases were called for trial, but defendant, appearing in proper person, moved for a continuance claiming that he had hired an attorney, one Joshua Frank. The court continued the trial date, indicated that Frank should enroll as attorney of record within 15 days, and instructed defendant that he would "proceed with or without an attorney" the next time the case was called for trial.
On July 6, 1994, a Motion to Determine Counsel was held and defendant again informed the court he had retained Frank. Frank, however, was not present. The minutes of August 29, 1994, reflect that the state continued the trial scheduled for that day. Defendant appeared in court on October 17, 1994, in proper person, for trial of three pending matters and informed the court that he was not satisfied with his attorney and would retain another. The trial was once again continued. Another Motion to Determine Counsel was set for November 30, 1994, but continued by the state. That motion was heard on February 8, 1995. Defendant again informed the court that he had retained Frank to represent him, but Frank never showed up for any of the proceedings. The court once again referred defendant to the IDB for appointment of counsel.
The three pending charges were again called for trial on April 10, 1995. Defendant was represented by an appointed attorney (who was standing in for yet another attorney appointed to represent defendant). That attorney requested a continuance after defendant informed the court he would retain his own counsel. The continuance was granted by the court. On May 26, 1995, defendant was brought before the court on the instant charge under docket number 50345, as well as for charges of simple criminal damage to property, docket number 50346, and disturbing the peace, docket number 50347. He was once again informed of his right to appointed counsel free of charge. Defendant waived his right to appointed counsel and informed the court that he would retain his own counsel. On May 31, 1995, under the docket numbers of the other three pending charges, defendant was in court for another Motion to Determine Counsel. He again informed the court that he would retain his own counsel and was given 10 days to do so. Defendant appeared in court with appointed counsel on July 6, 1995, for arraignment for the instant charge and the charges under docket numbers 50346 and 50347, and pled not guilty. Defendant appeared in court without counsel on September 11, 1995, under all six docketed cases, including the instant case. At that hearing the following colloquy transpired between the trial court and defendant:
Q. I notice the case was continued one, two, three times so that you would retain your own attorney. Each time you said that you would retain your own attorney. That's in addition to at the arraignment where you appeared in proper person and entered your plea of not guilty and indicated that you would retain your own attorney; is that right?
A. Yes, sir.
Following that exchange, the trial court questioned defendant regarding his desire to have court appointed counsel. Defendant refused such representation. Thereafter, defendant elected to proceed with the jury trial which the trial court ordered to begin the next day. It was at that point that the state decided to proceed with the charge at hand.
We recognize that it is well settled law that an appellate court is prevented from considering evidence which is not part of the record. State v. Pertuit, 95-935 (La.App. 5 Cir. 3/13/96); 673 So.2d 1055, citing State v. *503 Aubrey, 609 So.2d 1183 (La.App. 3 Cir.1992); see also, State v. Isgitt, 590 So.2d 763 (La. App. 3 Cir.1991). In Pertuit, the issue before the court was whether two DWI waiver forms from two previous DWI offenses relied on by the state in the third offense DWI trial were to be considered part of the record. The waiver forms were not introduced as exhibits at the hearing on the motion to quash, but were merely attached to the state's appellate brief. There, the court properly concluded that the waiver forms were not part of the record and could not be considered by the court on appeal. In Aubrey, the issue at hand was validity of Batson challenges. The question was whether the court could consider registration voter detail inquires attached to defendant's brief but not filed for record in the court below. This court held that the documents were not properly in the record and, therefore, the court could not consider them. Similarly, in Isgitt, this court pretermitted a question of whether a jury instruction was erroneously given because defendant did not timely object or provide the court with written proposed charges, even though defendant attached an affidavit stating that he did, in fact, give the court the proposed jury charges.
In those cases, there is no indication that the trial court was made aware of or took notice of the evidence rejected by the appellate court. Further, in those cases, the court clearly would have had to go "outside the record" for evidence that went to the heart of the issue involved. In the instant case, the trial court was obviously made aware of defendant's recalcitrant nature by review of the entire record (eight different judges and the commissioner had presided over the various appearances made by defendant). Certainly, defendant was trying to manipulate the court into postponing his case by claiming that he was unable to obtain the attorney of his choice or that he was unsatisfied with either his appointed or retained counsel. Even though the other proceedings have different docket numbers than the instant case, they should be considered as they form a complete picture of defendant's actions and the attempts by the trial court to move the cases forward. Further, the trial court was aware of each of the proceedings. Based upon the numerous court appearances, the trial court ordered defendant to proceed to trial even though he was unrepresented. The record of the other docketed cases only show a pattern of defendant's difficult and bullheaded nature. They do not constitute evidence necessary to obtain a conviction as in Pertuit; evidence to support a violation of a constitutional guarantee as in Aubrey; or evidence which supports a contemporaneous objection as in Isgitt.
Finally, the court may take judicial notice of adjudicative facts. La.Code Evid. art. 201(A). An adjudicative fact is a fact normally determined by the trier of fact and must be one that is not subject to reasonable dispute. La.Code Evid. art. 201(A) and (B). Such a fact must either be generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. La.Code Evid. art. 201(B). Clearly, the trial court may take judicial notice of its official minutes.
We have concluded that we may review the minutes of the trial court to gain an understanding of defendant's recalcitrant nature. However, a review of the record in this matter reveals a question of whether defendant knowingly and intelligently waived his constitutional right to counsel before being allowed to represent himself. Smith, 479 So.2d 1062, State v. Sepulvado, 549 So.2d 928 (La.App. 3 Cir.1989), and State v. Mitchell, 580 So.2d 1006 (La.App. 3 Cir.1991), writ denied, 613 So.2d 969 (La.1993). The magic words "dangers and disadvantages" are not the sine qua non of a knowing and intelligent waiver of the right to assistance of counsel at trial. See State v. Fritcher, 95-0124 (La. App. 1 Cir. 4/4/96); 672 So.2d 295. Although a defendant should be made aware of the dangers and disadvantages of self-representations, there is no particular formula which must be followed by the trial court in determining whether a defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La.1980). This reasoning was followed in Mitchell, 580 So.2d 1006 and in State v. Bond, 94-509 (La.App. 5 Cir. *504 1/31/95); 650 So.2d 354, both examples of defendants who refused to be represented by court appointed counsel, and who, by their actions and inactions, impliedly waived their right to counsel. The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Hayes, 95-1170 (La.App. 3 Cir. 3/6/96); 670 So.2d 683, citing State v. Harper, 381 So.2d 468 (La.1980).
Unlike in Hayes, where we held the defendant had not waived his right to counsel by his actions, this court has recognized that there are situations in which the fundamental right to counsel can be construed to have been waived by the dilatory actions of the defendant. This concept is best illustrated in Mitchell, 580 So.2d 1006. At Mitchell's first court appearance on December 16, 1987, a court appointed attorney was assigned. On April 4, 1988, Mitchell pled not guilty; he also told the trial court that he had been able to get the money together to hire a private attorney. On July 25, 1988, the trial court told Mitchell that he must hire an attorney, otherwise, he would be assigned a court appointed attorney. Mitchell took the court appointed attorney on July 27, 1988; the trial was continued for a third time.
At an August 15, 1988 hearing, Mitchell told the trial court he had a conflict with the appointed attorney, requested that the appointed attorney be relieved, and that he be given a chance to hire another attorney. The trial court granted a fourth continuance, but, recognizing Mitchell's dilatory tactics, admonished him. The trial court gave Mitchell until August 17, 1988, to have an attorney enrolled as counsel of record or be prepared to go to trial representing himself. On October 24, 1988, when the matter was called for trial, the trial judge asked Mitchell if he was going to represent himself. Mitchell stated that he had planned to represent himself, but could not because he was undergoing some form of "treatment." Further, he admitted that he never attempted to retain an attorney after the August 15, 1988 hearing. Mitchell was allowed to represent himself at trial, but the trial court appointed an attorney from the Indigent Defender Board to assist if asked to by the defendant. The indigent defender attorney gave occasional assistance, but Mitchell conducted most of his defense.
The court in Mitchell found that he had waived his constitutional right to counsel due to his actions in the aggregate proceedings and held:
The defendant in this matter was not expressly warned of the dangers of self-representation. However, the defendant was repeatedly given the opportunity to obtain his own counsel or to accept the appointed counsel made available to him. On each occasion, he reversed his previous decision. Additionally, he failed to make any attempt to obtain the independent counsel he insisted upon. This conduct can only be interpreted as an attempt to avoid trial.
A defendant's failure to secure his own counsel and refusal to accept court appointed counsel may result in an implied waiver of his right to counsel. (citations omitted.)
Mitchell, 580 So.2d at 1009.
In the case sub judice, defendant's dilatory tactics are even more flagrant than those of the defendant in Mitchell. In his eleven court appearances, from November of 1993 until September of 1995, defendant informed the trial court he had retained counsel or would retain counsel on eight occasions. Defendant obtained three continuances of trial so he could retain counsel. Furthermore, the state invoked three hearings on "Motions to Determine Counsel" in attempts to have defendant choose either to be represented by the Indigent Defender's Office or to retain his own counsel. In a situation such as this, the state is under pressure to move forward with trial. Not only does public pressure cause the state to move cases forward, but La.Code Crim.P. art. 578 places strict time limits upon the commencement of trial. Further, a defendant has a constitutional right to a speedy trial. Yet, the state cannot proceed to trial unless the defendant is represented by counsel, or the defendant has knowingly and intelligently waived his right to counsel. *505 Likewise, the trial court finds itself on the horns of a dilemma in these situations for the same reasons. From defendant's initial arraignment, in November of 1993, his arraignment on the instant case, June 6, 1995, until his trial three months later, defendant did nothing to retain counsel. Exasperated, the trial court appointed an attorney from the Indigent Defender's Office to assist defendant when all six pending prosecutions were called to trial on September 11, 1995, but defendant refused the assistance of court appointed counsel. Clearly, defendant's conduct in failing to secure his own counsel or to accept court appointed counsel in this matter constitutes an implied waiver of his right to counsel. For the foregoing reasons, we find defendant's assignments of error numbers one, two, and three to be without merit.
In the interest of justice, we are compelled to review the record to determine whether defendant was unduly prejudiced by proceeding without counsel. In so doing, we shall consider whether there was sufficient evidence for the jury to find defendant guilty as charged. When the issue of sufficiency of evidence is considered on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
There was substantial evidence admitted at trial that could lead the jury to convict defendant. The four police officers that were on the scene and restrained defendant testified. They each corroborated the other's claim that a search of defendant after his arrest produced a small hand gun, a .38 caliber derringer. Defendant's own witnesses, and defendant himself, testified that the hand gun was found on his person. A deputy clerk of court provided records from his office showing that defendant was convicted of simple burglary on January 30, 1990. Defendant's parole officer testified that defendant was actually on parole for the simple burglary conviction at the time this offense occurred. Finally, Walter Harington, a deputy sheriff of the Acadia Parish Sheriff's Office, testified that he was in court on January 30, 1990, and witnessed defendant plead guilty to simple burglary. Clearly, the evidence was sufficient for any rational trier of fact to find the essential elements of the crime were proven beyond a reasonable doubt.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant designated assignment of error number four but did not brief it on appeal. The court may consider as abandoned any assignment of error which has not been briefed. Uniform RulesCourt of Appeal, Rule 2-12.4. Therefore, this assignment of error is considered abandoned.

CONCLUSION
Defendant, Trivial Batiste, by his dilatory actions, waived his right to the assistance of counsel at trial. The trial court did not commit error in requiring defendant to go to trial without counsel. The evidence admitted at trial was sufficient to convict defendant, therefore, his conviction and sentence are affirmed.
AFFIRMED.