713 So.2d 479 (1998)
STATE of Louisiana, Appellee,
v.
Jerry DUNN, Jr., Appellant.
No. 30269-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
Opinion Reversing on Rehearing May 15, 1998.
*480 Louisiana Appellate Project by J. Wilson Rambo, Monroe and H. Paul Garner, for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, James R. Hatch, Jeffery Robinson, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
BROWN, Judge.
Defendant, Jerry Dunn, Jr., was convicted of simple escape, adjudicated a fourth felony offender and sentenced to the minimum term of 20 years at hard labor. We affirm.

Facts and Procedural Background
On June 29, 1993, defendant appeared in the Second Judicial District Court, Claiborne Parish, Louisiana, for a preliminary examination in connection with several counts of illegal possession of stolen things. The court found probable cause and defendant was taken to a holding area for transfer back to jail. A deputy was stationed outside the only door to the room. Defendant, wearing orange prison clothes and leg chains, escaped by climbing out of the window, jumping down to a flight of stairs and shuffling away.
Defendant fled to Minnesota, where under the alias John Wayne Cooper, he was apprehended on outstanding charges in that state. After serving 18 months in prison in Minnesota, defendant was extradited back to Claiborne Parish where a charge of simple escape was added to those already pending.
Trial on the escape charge was held on September 16, 1996. A jury found defendant guilty and the trial court sentenced him to five years at hard labor. Thereafter, this being defendant's fourth felony conviction, he was adjudicated a habitual offender and sentenced to the minimum term of 20 years at hard labor.
Defendant has appealed his conviction and sentence.

Discussion

Self-representation
Defendant urges that the trial court erred in finding that he waived his right to counsel, failing to advise him of the dangers of self-representation and failing to provide him with "stand-by" counsel. Defendant further asserts that he was forced to conduct his own defense in violation of his right to counsel.
When defendant was in court in 1993, on the day of his escape, he refused to be represented by Darrell Avery, the attorney from the Indigent Defenders' Office. At that time, the trial court tediously examined defendant concerning his education and choice not to use a public defender. The court explained in detail the pitfalls of self-representation and emphasized that if defendant chose to be his own lawyer, the rules of evidence would still apply. Defendant steadfastly refused court-appointed counsel.
Following his extradition back to Claiborne Parish, defendant was arraigned on the escape charge. At his arraignment on March *481 5, 1996, he was represented by indigent defender Darrell Avery. Defendant and his court-appointed counsel were in court again on April 2, 1996, for a preliminary examination and bond reduction hearing. Probable cause was found, the bond was not reduced and trial was set for May 20, 1996. Defendant again objected to being represented by a court-appointed attorney and just before his trial date, retained Rick Chandler. Because he was new to the case, Chandler obtained a continuance of the trial. On June 4, 1996, based upon defendant's failure to pay his fee, Chandler withdrew. On this date, the trial court instructed defendant to obtain an attorney before his next court appearance, which was scheduled for June 24, 1996. Defendant appeared on June 24, 1996, for the court to determine whether he had hired an attorney.[1] Although he was out on bond and employed, defendant had not secured representation and stated, "... I guess I'm going to have to represent myself." The judge quizzed defendant concerning his employment and reminded defendant that his case was set for trial in September. The court ordered the record to reflect that at the present time, defendant was representing himself.
Defendant's case was on the trial docket for September 16, 1996. On that date, the state announced that it was ready to proceed and the following colloquy occurred between the court and defendant:
THE COURT: ... Mr. Dunn has raised this issue saying, he at this time does not want to represent himself ...
DEFENDANT DUNN: I didn't say I didn't want to represent myself. I said I haven't went through a proceeding to grant me the right to represent myself....(emphasis added).
THE COURT: Do you want to represent yourself?
DEFENDANT DUNN: Well, I don't have a choice, but I'm not prepared today to represent myself....
Considering defendant's refusal of courtappointed counsel, coupled with his failure to obtain counsel, the trial court found that defendant's conduct constituted a waiver of right to counsel. During the jury selection process, defendant told some prospective jurors that, "I asked for the right to defend myself."
U.S. Constitution Amendments VI and XIV, as well as La. Const. Article I, Sec. 13 guarantee an accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980).
An indigent defendant has the right to court-appointed counsel; however, an indigent does not have the right to have a particular attorney appointed. An indigent's right to choose his attorney extends only so far as his ability to retain the attorney of his choice; however, he may not procrastinate in the exercise of this right to obstruct or thwart the orderly progression of the case. State v. Harper, 381 So.2d 468 (La.1980).
A defendant who wishes to exercise his right to retain counsel of his choice must do so at a reasonable time, in a reasonable manner and at an appropriate stage of the proceeding. State v. Seiss, 428 So.2d 444 (La.1983). An accused's unquestioned right to legal representation at trial can not be manipulated by him, by attempts at last minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. City of Baton Rouge v. Dees, 363 So.2d 530 (La. 1978).
Waiver of the right to counsel must be made knowingly, understandingly and intelligently. Faretta, supra; State v. Strain, 585 So.2d 540 (La.1991); State v. Moore, 29,212 (La.App. 2d Cir. 01/22/97), 687 So.2d 647. A defendant may waive his right to counsel if he knows what he is doing, his choice is made with his eyes open and the record reflects his awareness of the dangers and disadvantages of self-representation. Faretta, supra; State v. Strain, supra.
The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the *482 background, experience and conduct of the accused. State v. Carpenter, supra; State v. Moore, supra; State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir.1991), writ denied, 600 So.2d 634 (La.1992).
A defendant's refusal to proceed with appointed counsel and his failure to retain counsel on his own may in some circumstances constitute a waiver of the right to counsel. See State v. Harper, supra; State v. McGowan, 359 So.2d 972 (La.1978); State ex rel. Johnson v. Maggio, 449 So.2d 547 (La.App. 1st Cir.1984), writ denied sub nom., State v. Johnson, 450 So.2d 354 (La.1984). If a defendant repeatedly fails to retain counsel, or if he appears without an attorney after being clearly and unequivocally warned by the trial court that the case will proceed to trial regardless, such fact may support a finding of implied waiver. See State v. Wisenbaker, 428 So.2d 790 (La.1983); State v. Batiste, 96-0526 (La.App. 3d Cir. 12/11/96), 687 So.2d 499, writ denied, 97-0174 (La.06/30/97), 696 So.2d 1003; State v. Mitchell, 580 So.2d 1006 (La.App. 3d Cir.1991), writ denied, 613 So.2d 969 (La.1993); State v. Jones, 565 So.2d 1023 (La.App. 1st Cir. 1990), writ denied sub nom., State ex rel. Jones v. State, 585 So.2d 565 (La.1991).
The court history in this case clearly reflects defendant's understanding of the right to counsel and his conscious choice not to accept representation by the court-appointed attorney. The record shows that defendant obtained one trial delay by the last minute enrollment of an attorney who later withdrew for non-payment of his fee. A hearing was thereafter conducted for enrollment of new counsel. At this hearing defendant was reminded of a future trial date and told to be ready.
The 1993 proceeding in which the court fully complied with all requirements to insure defendant's understanding of the consequences of his rejection of court-appointed counsel helps in determining defendant's knowledge, capacity and choice in this case. On the day of trial, defendant stated to the court that he was not claiming that he did not want to represent himself but was only stating that a hearing had not occurred in which he was granted the right to represent himself. The court then specifically asked defendant if he wanted to represent himself. He replied that he did but was not ready for trial. Obviously, defendant was attempting to manipulate the system to secure another delay. This assignment of error is meritless

Insufficient Evidence to Convict
Defendant argues that the evidence was insufficient to support his conviction of simple escape. The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
La. R.S. 14:110 provides:
A. Simple escape shall mean any of the following:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
Defendant argues that he was given permission to leave by Deputy Fratus, who was deceased at the time of trial. He argues that because no evidence was presented to rebut his claim that Deputy Fratus gave him permission to leave, the evidence was insufficient to support a conviction.
This argument lacks merit. Deputy John Drew testified that Deputy Fratus asked him to watch defendant while he attended to other duties. This clearly implies that Deputy Fratus did not give defendant "permission" to leave. Further, the fact that defendant jumped from a window supports the jury's rejection of defendant's testimony. See State v. Mussall, 523 So.2d 1305 (La.1988). This assignment lacks merit.

*483 Habitual Offender Adjudication

Validity of Enhancement For Simple Escape Conviction
Defendant argues that because he was convicted of simple escape, his sentence should not be enlarged by application of the habitual offender law. In support he relies on State v. Cox, 344 So.2d 1024 (La.1977); however, since State v. Cox was decided, the legislature has amended the criminal statute to make simple escape a separate and distinct felony. There is no enhanced penalty endemic to the simple escape statute as existed when State v. Cox was decided. There is currently no bar to enhancement of the penalty for simple escape by application of the habitual offender statute. State v. Goodin, 550 So.2d 801 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1276 (La.1990). See also State v. Townley, 94-1002 (La.App. 3d Cir. 05/3/95), 657 So.2d 129, writ denied, 95-2371 (La.01/26/96), 666 So.2d 669; State v. Harrelson, 590 So.2d 1240 (La.App. 1st Cir.1991). This assignment of error lacks merit.

Sufficiency of Evidence for Habitual Offender Adjudication
David Alan Yates, a criminalist with the North Louisiana Crime Lab Satellite Laboratory, took fingerprints from defendant. Mr. Yates testified that Exhibit S-2, a penitentiary packet from Minnesota bearing the signature of John Cooper, an alias used by defendant, and S-3, a reference fingerprint card taken in the courtroom that day, were made by the same person. The packet showed defendant's convictions for aggravated robbery (1992) and escape from custody (1995) in Minnesota.
State's Exhibit 1, defendant's penitentiary packet from Wade Correctional Center, was not received into evidence upon defendant's objection.
Audie Edwards, a Louisiana probation and parole officer, testified that he was defendant's parole officer in 1987. He identified defendant as the individual he had supervised for approximately three months. Mr. Edwards believed, but was unsure, that defendant had been convicted of simple burglary.
Celeste Ware, court reporter for the Second Judicial District Court, identified a transcript from defendant's trial. The court admitted the transcript into evidence. The transcript contained a colloquy in which defendant admitted being convicted of "four or five" felonies and admitted being convicted of aggravated robbery in 1993. Defendant further admitted being convicted of illegal possession of stolen things (1988) and theft (1984) in Louisiana. The present crime of simple escape occurred in 1993.
The court found that the state had met its burden of proving defendant a habitual offender. Pursuant to La. R.S. 15:529.1 A(1)(c)(i), the court sentenced defendant to 20 years imprisonment, to be served consecutively with any other sentence, with credit for time served beginning upon the date of January 16, 1996 (the date of his release from the Minnesota Department of Corrections).
The state carries the burden of proof in habitual offender proceedings. La. R.S. 15:529.1 D(1)(b). Subsection F of that statute provides:
F. The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
Although this statute designates the properly authenticated certificates of the warden as prima facie evidence of the imprisonment *484 and discharge of the person under the conviction set forth therein, the necessary facts constituting proof that the accused is a habitual offender may be established by other competent evidence. State v. Barrow, 352 So.2d 635 (La.1977). The proof set forth in Section 529.1 F is neither sacramental nor exclusive to such a showing. Id. In a habitual offender proceeding the state is only required to establish a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990). Identification of the accused may be by testimony of witnesses, expert testimony as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record. Id. The sole issue on appeal is whether the evidence introduced at trial will support the finding that defendant is the same person as the previously convicted felon. Id.
Defendant's trial testimony affirmatively shows that he was a previous felon. Defendant admitted being convicted of aggravated robbery, illegal possession of stolen things, and theft. The Minnesota records showed an additional conviction for escape from custody.
Defendant objected to the introduction of S-2, a pen pak from an Minnesota showing that defendant was convicted under the name "John Wayne Cooper." Defendant objected that there was no photograph in the packet; that there was nothing to identify "John Wayne Cooper" as defendant, other than a letter from Louisiana to Minnesota authorities requesting the information; and that there was no certificate from the warden or chief officer of the prison as required by La. R.S. 15:529.1 F. The trial court admitted the pen pak, relying on La. C.E. art. 902. Defendant objected.
Defendant now argues on appeal that the Minnesota pen pak lacked the proper certification or authentication required by La. C.E. art. 902(2)(a). However, the record reflects that the trial court admitted the pen pak pursuant to La. C.E. art. 902(1) as a domestic public document under seal.
Article 902 provides in pertinent part:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
Defendant's threefold objection at trial to the introduction of the pen pak included only one argument relating to authentication: that the state had not complied with La. R.S. 15:529.1 F. Although he objected to the trial court's reliance on La. C.E. art. 902 to admit the pen pak, defendant did not specifically argue that the requirements of Article 902(1) had not been met and certainly did not present the argument advanced on appeal relating to Article 902(2)(a).
Because defendant did not urge his present argument to the trial court, he is not entitled to have it heard on appeal. Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection appears of record, stating the specific grounds for the objection. La. C.E. art. 103 A(1). See also La.C.Cr. P. art. 841; State v. Brown, 444 So.2d 1346 (La.App. 2d Cir.1984), writ denied, 449 So.2d 1343 (La.1984).

Excessive Sentence

Enhanced Sentence
Article I, § 20 of the Louisiana Constitution protects individuals from cruel, excessive, or unusual punishment. The mandatory minimum sentences provided by R.S. 15:529.1 are not facially unconstitutional; however, it is possible that for a particular offense and offender that they would violate the constitutional protection against excessive punishment. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370; State v. Dorthey, 623 So.2d 1276 (La.1993).
The PSI reveals that this 30-year-old defendant had a significant juvenile record; *485 eleven adult arrests since 1984; four prior felony convictions for theft, illegal possession of stolen things, aggravated robbery and escape from custody. If the aggravated robbery conviction had been found to be a crime of violence, defendant would have received a life sentence. At the time of sentencing, he faced a pending charge of illegal possession of stolen things in Claiborne Parish. While in prison, he was convicted for introduction of contraband. La. R.S. 14:402. Defendant had a high school education and was not married.
Under the circumstances, the trial court rejected the argument that the aggravated robbery conviction in Minnesota was a crime of violence.[2] The habitual offender statute provided for a minimum sentence of 20 years and a maximum sentence of life. On this record, the 20-year sentence imposed is not excessive.

Original Sentence
Defendant attacks his original sentence imposed before his habitual offender adjudication. Any issues relating to that sentence are moot. State v. Keys, 29,369 (La.App.2d Cir. 05/07/97), 694 So.2d 1107.

Patent Error Review
The record reflects that at sentencing, the trial court failed to inform the defendant of the period in which to file for post-conviction relief. The trial court is directed to send written notice of this period to defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of this notice into the record. La.C.Cr. P. art. 930.8; State v. Henderson, 28,932 (La.App.2d Cir. 12/11/96), 684 So.2d 1054.
AFFIRMED.
STEWART, J., dissents and assigns written reasons.
STEWART, Judge, dissenting.
The majority opinion relies on an incomplete recitation of the facts and implies that waiver of the right to counsel is valid for all offenses with which defendant is charged if validly waived in one offense. The majority is incorrect in concluding that, in this matter, defendant knowingly and intelligently waived the right to be represented by an attorney. For the following reasons, I respectfully dissent.
A bill of information charging defendant, Jerry Dunn, with Simple Escape, a violation of La. R.S. 14:110, was filed on September 14, 1995. Defendant appeared with appointed counsel on March 5, 1996, for arraignment on that charge. After hearing on April 2, 1996, the trial court denied defendant's motion to reduce bond. Defendant and his appointed counsel were present at that hearing.
This matter was initially scheduled for trial on May 20, 1996. At that time, defendant appeared with appointed counsel who moved to withdraw. Upon the enrollment of an attorney retained by defendant, the trial court granted the motion and continued the trial. The court allowed defendant's new counsel fifteen days to file any motions and set such motions for hearing on June 4, 1996.
On June 4, 1996, several motions related to this charge and another offense with which defendant was charged were heard. Defendant was present with retained counsel. The trial court heard a motion for preliminary examination in the case wherein defendant was charged with illegal possession of stolen things, a motion for consolidation, and a motion to withdraw. The trial court denied the motion for consolidation and passed the motion for preliminary exam on the other charge, pending determination whether a preliminary exam had been held previously. If not, the court set the motion for hearing on July 2, 1996. The trial court also granted retained counsel's motion to withdraw based on defendant's failure to compensate counsel. The defendant had indicated he wished to file a motion to recuse the trial judge. The trial judge ordered Dunn to appear on June 24, 1996, before Judge Robert Butler for the hearing on the recusal motion, if filed, and to have an attorney present. If such motion was not filed, the court ordered Dunn to appear on July 2, 1996 "with your present counsel for purposes of introducing that attorney to the Court and thereafter we'll set the trial date."
*486 On June 24, 1996, Dunn appeared before Judge Butler without an attorney. The record indicates that neither Dunn nor Judge Butler mentioned the recusal motion. Dunn stated that he could not afford to hire another lawyer, "[s]o, I guess I'm going to have to represent myself." When questioned by Judge Butler, Dunn indicated that he was employed approximately forty hours per week, earned $5.50 per hour, and hoped to be able to retain a lawyer. Although Judge Butler asked defendant about his employment and wages, he did not fully delve into the issue of whether Dunn could afford counsel or whether he would accept appointed counsel, if entitled, nor did the trial judge explain and ascertain Dunn's understanding of the significance of waiver of right to counsel. However, the presiding judge observed that Dunn's case was set for trial and stated, "You've got a few months to collect some money to hire your own. I hope you can do it, okay." The court then stated, "The record will reflect that at the present time, he's representing himself."
On July 3, 1996, in a court session without the defendant present, the trial judge noted that a motion to appoint counsel had been filed. The state asked for a bench warrant because Dunn was not present in court. At that point, a sheriff's deputy and deputy clerk informed the judge that Dunn had been present in court on June 24, 1996, before Judge Butler. They also indicated that Dunn would be representing himself. The court refixed outstanding motions, including the motion for appointment of counsel, for August 6, 1996. The record does not reflect disposition of any matters in the case on that date.
The next date in which proceedings were had was September 16, 1996, when Dunn appeared for trial without an attorney. Several cases were set for that day. Dunn indicated he was not ready for trial. The court began introductory remarks to the jury venire. The state called Dunn's case for trial. The court stated, "Mr. Dunn is representing himself by prior court order," and began calling prospective jurors for voir dire. The court asked Dunn if he had a witness list to present; Dunn replied, "Your Honor, I'm not even prepared for this case." (Emphasis added.)
After initial questioning of the panel by the court, with little input from the prosecutor or Dunn, the court allowed the prosecutor to question the panel. Afterwards, the court asked Dunn if he wished to question the prospective jurors. Dunn responded, "If you could let me know what it is I'm supposed to be inquiring of...." (Emphasis added.) After Dunn expressed confusion, the court called Dunn and the prosecutor to the bench.
The court held a bench conference on the record, indicated that she had allowed Dunn's retained counsel to withdraw and noted, after reviewing the minutes, "on June 24, 1996, Mr. Dunn was here before Judge Butler who said that he was ... would be representing himself. He was notified on June 24, 1996, that his trial was fixed for the September criminal petit jury term." Dunn protested that he had not said he wanted to represent himself. When asked if he wanted to by the court, he responded, "Well, I don't have a choice, but I'm not prepared today to represent myself." (Emphasis added.)
The court stated that Dunn's conduct constituted a waiver of the right to counsel, particularly since his case had been set for trial on at least two other occasions. The court stated that Dunn "ha[d] been notified specifically as late as June 24, 1996, that his trial date would be on this date, and therefore, we will proceed."
During cross-examination of one witness, Dunn asked if he could "have time to obtain the documents that I really need as far as proving that he did have the knowledge." (Emphasis added.) The district court denied the request and stated, "We had a hearing in 1993 where Judge Whitten informed you, you said you did not want the indigent defender to represent you, that you had to have your own attorney or represent yourself. You've known since 1993 that you would be representing yourself...." However, the 1993 hearing arose in a separate proceeding in another offense with which Dunn was charged.
The accused in a criminal proceeding has the right to assistance of counsel for his *487 defense. U.S. Const. amends. VI, XIV; La. Const. art. I, § 13; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
A valid waiver of the right to counsel must be knowing and intelligent. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open. Id.
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296, 1298 (La.1980). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Id. Before a trial judge can allow a defendant to represent himself, he must determine whether defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. Id.
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); State v. Strain, 585 So.2d 540, 542 (La.1991).
A defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Seiss, 428 So.2d 444, 447 (La.1983). The accused's unquestioned right to legal representation at his trial cannot be manipulated by him, by attempts at last-minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. City of Baton Rouge v. Dees, 363 So.2d 530, 531 (La.1978). A defendant's refusal to proceed with appointed counsel and to retain counsel on his own may constitute a waiver of the right to counsel. See State v. Harper, 381 So.2d 468, 471 (La.1980); State v. McGowan, 359 So.2d 972, 974 (La.1978); State ex rel. Johnson v. Maggio, 449 So.2d 547, 549 (La.App. 1st Cir.), writ denied sub nom., State v. Johnson, 450 So.2d 354 (La. 1984). If an accused repeatedly fails to retain counsel for trial, or if he appears without counsel after being clearly and unequivocally warned by the trial court that the case will be tried regardless, such fact may support a finding of implied waiver. State v. Wisenbaker, 428 So.2d 790, 793 n. 10 (La.1983).
In State v. Harper, supra, the defendant successfully sought to relieve his court-appointed counsel. He asked to have counsel appointed from the "Civil Liberties Union." The court instructed the defendant to retain counsel or represent himself, and instructed an indigent defender to assist the defendant at trial. The defendant appeared at trial without counsel. The defendant insisted he neither wanted to represent himself nor to accept the representation of the appointed indigent defender. The court held that the defendant's refusal to accept the assistance of appointed counsel amounted to a waiver of his right to the assistance of counsel. See Harper, 381 So.2d at 471.
In State v. Batiste, 96-0526 (La.App. 3d Cir. 12/11/96), 687 So.2d 499, in eleven court appearances over the course of two years, the defendant informed the court on eight occasions that he had retained or would retain counsel, yet failed to do so. He obtained three continuances of trial for the purpose of retaining counsel; moreover, the state invoked three hearings in an attempt to have the defendant choose to be represented by an indigent defender or retain his own counsel. The trial court called the case for trial and appointed an indigent defender to represent the defendant. The defendant refused the assistance of the indigent defender and insisted again that he would retain counsel.
*488 The trial court set the trial for the following day. When the defendant again appeared without counsel, the judge proceeded with trial. The court of appeal held that the defendant had impliedly waived his right to counsel. See Batiste at pp. 9-10, 687 So.2d at 504-05.
In State v. Mitchell, 580 So.2d 1006 (La. App. 3d Cir.1991), writ denied, 613 So.2d 969 (La.1993), the defendant was repeatedly given the opportunity to obtain his own counsel or to accept the appointed counsel made available to him. On each occasion, he reversed his previous decision, and never retained private counsel. The trial judge eventually ordered the trial to proceed, ordering an indigent defender to assist the defendant during the trial. The court of appeal held that the defendant's conduct constituted an implied waiver of the right to counsel. See id. at 1009. See also State v. Jones, 565 So.2d 1023 (La.App. 1st Cir.1990), writ denied sub nom., State ex rel. Jones v. State, 585 So.2d 565 (La.1991) (defendant repeatedly rejected appointment of indigent defender, deliberately misled the court on numerous occasions concerning his attempts to retain private counsel, and received several continuances for the purpose of obtaining counsel).
In State ex rel. Johnson v. Maggio, 449 So.2d 547 (La.App. 1st Cir.1984), the defendant was advised at arraignment of his right to counsel and instructed to contact the court if he desired appointed counsel. The defendant appeared for trial without counsel. The court refused to continue the trial, but offered to appoint an attorney for the defendant. The defendant refused. The trial proceeded. The court of appeal held that the defendant's actions in continually refusing appointed counsel and failing to retain private counsel amounted to a waiver of his right to counsel. Johnson, 449 So.2d at 549-50.
In this case, Dunn's actions did not warrant forcing him to proceed to trial without an attorney on the charge of simple escape. Dunn replaced his first (appointed) attorney with retained counsel, and the court granted his second (retained) attorney's motion to withdraw because Dunn failed to pay him. When Dunn appeared before Judge Butler without an attorney for the recusal motion, Dunn indicated a willingness to retain a lawyer but indicated that he could not afford one at that time. Although Judge Butler stated, "The record will reflect that at the present time, he's representing himself," Judge Butler did not conduct a full hearing to determine whether Dunn was entitled to another appointed attorney, nor did he determine whether Dunn intended to waive his right to counsel. When Dunn appeared for trial without an attorney, Judge Clason stated that Dunn was "representing himself by prior court order." Judge Clason stated that Dunn had been previously notified that trial was scheduled for that day, and that his appearance without an attorney constituted a waiver of the right to counsel.
I would find that the trial court erred in failing to appoint Dunn an attorney to represent, or at least assist, him during trial or to continue the trial. Dunn's behavior did not reach the level of abuse and delay exhibited by the defendants in the decisions cited herein. Judge Clason's statement that trial of this matter had been scheduled twice prior to September, 1996, is not supported by the record. The record reflects that the only previous setting of this matter for trial was in May, 1996, when Dunn appeared with newly retained counsel. The transcript of that hearing does not indicate that Dunn had hired counsel in an attempt to prolong this matter or delay trial. Neither Judge Clason nor Judge Butler informed Dunn of the dangers and disadvantages of self-representation. Dunn was never explicitly warned that he would be forced to proceed to trial without an attorney if he did not retain one or accept appointed counsel. Moreover, Judge Clason incorrectly assumed that Dunn had expressed a desire to represent himself when he appeared before Judge Butler and incorrectly concluded, based on the minutes of the June 24, 1996 hearing and the statements of a deputy sheriff and a minute clerk, that Judge Butler had determined that Dunn had knowingly and intelligently waived the right to counsel. In fact, all the defendant's actions indicate that he did not wish to represent himself. On this record, I would not *489 find that Dunn's behavior was an express or, even, implied waiver of the right to counsel.
The state successfully sought to supplement the record with the transcript of a 1993 proceeding in which Dunn, charged with illegal possession of stolen things, elected to represent himself and the trial judge informed him of the dangers and disadvantages of self-representation. This transcript adds nothing to the present inquiry, for it does not concern Dunn's self-representation on the instant charge. The bill of information charging defendant with the instant offense was not filed until September 14, 1995, approximately two years after the 1993 hearing. Defendant was not arraigned in the instant matter until March 5, 1996. The majority should not have considered that 1993 hearing, held in a separate matter, and errs in finding that Dunn validly waived right to counsel based on that 1993 hearing.
The right of an accused to be represented by counsel is so fundamental that court should carefully scrutinize each record raising that issue before determining that a waiver of counsel is valid. See Gideon v. Wainwright, supra. In this matter, the majority's review of the record was, at best, cursory and based on irrelevant information (the 1993 hearing).
For those reasons, I would recommend the conviction be reversed and the case remanded for a new trial. Therefore, I respectfully dissent.
Before MARVIN, C.J., and BROWN, WILLIAMS, STEWART and GASKINS, JJ.

ON REHEARING
STEWART, Judge, on rehearing.
A jury found defendant, Jerry Dunn, Jr., guilty of a violation of La. R.S. 14:110, simple escape. Dunn now appeals his conviction and sentence and assigns sixteen errors. Because we do not conclude that defendant knowingly and intelligently waived his right to be represented by an attorney, we reverse defendant's conviction and remand for new trial.

FACTS
A bill of information charging defendant with simple escape, a violation of La. R.S. 14:110, was filed on September 14, 1995. Defendant appeared with appointed counsel on March 5, 1996, for arraignment on that charge. After hearing on April 2, 1996, the trial court denied defendant's motion to reduce bond. Defendant and his appointed counsel were present at that hearing.
This matter was initially scheduled for trial on May 20, 1996. At that time, defendant appeared with appointed counsel who moved to withdraw. Upon the enrollment of an attorney retained by defendant, the trial court granted the motion and continued the trial. The court allowed defendant's new counsel fifteen days to file any motions and set such motions for hearing on June 4, 1996.
On June 4, 1996, several motions related to this charge and another offense with which defendant was charged were heard. Defendant was present with retained counsel. The trial court heard a motion for preliminary examination in the case wherein defendant was charged with illegal possession of stolen things, a motion for consolidation, and a motion to withdraw. The trial court denied the motion for consolidation and passed the motion for preliminary exam on the other charge, pending determination whether a preliminary exam had been held previously. If not, the court set the motion for hearing on July 2, 1996. The trial court also granted retained counsel's motion to withdraw based on defendant's failure to compensate counsel. The defendant had indicated he wished to file a motion to recuse the trial judge. The trial judge ordered Dunn to appear on June 24, 1996, before Judge Robert Butler for the hearing on the recusal motion, if filed, and to have an attorney present. If such motion was not filed, the court ordered Dunn to appear on July 2, 1996 "with your present counsel for purposes of introducing that attorney to the Court and thereafter we'll set the trial date."
On June 24, 1996, Dunn appeared before Judge Butler without an attorney. The record indicates that neither Dunn nor Judge Butler mentioned the recusal motion. Dunn stated that he could not afford to hire another *490 lawyer, "[s]o, I guess I'm going to have to represent myself." When questioned by Judge Butler, Dunn indicated that he was employed approximately forty hours per week, earned $5.50 per hour, and hoped to be able to retain a lawyer. Although Judge Butler asked defendant about his employment and wages, he did not fully delve into the issue of whether Dunn could afford counsel or whether he would accept appointed counsel, if entitled, nor did the trial judge explain and ascertain Dunn's understanding of the significance of waiver of right to counsel. However, the presiding judge observed that Dunn's case was set for trial and stated, "You've got a few months to collect some money to hire your own. I hope you can do it, okay." The court then stated, "The record will reflect that at the present time, he's representing himself."
On July 3, 1996, in a court session without the defendant present, the trial judge noted that a motion to appoint counsel had been filed. The state asked for a bench warrant because Dunn was not present in court. At that point, a sheriff's deputy and deputy clerk informed the judge that Dunn had been present in court on June 24, 1996, before Judge Butler. They also indicated that Dunn would be representing himself. The court refixed outstanding motions, including the motion for appointment of counsel, for August 6, 1996. The record does not reflect disposition of any matters in the case on that date.
The next date in which proceedings were had was September 16, 1996, when Dunn appeared for trial without an attorney. Several cases were set for that day. Dunn indicated he was not ready for trial. The court began introductory remarks to the jury venire. The state called Dunn's case for trial. The court stated, "Mr. Dunn is representing himself by prior court order," and began calling prospective jurors for voir dire. The court asked Dunn if he had a witness list to present; Dunn replied, "Your Honor, I'm not even prepared for this case." (Emphasis added.)
After initial questioning of the panel by the court, with little input from the prosecutor or Dunn, the court allowed the prosecutor to question the panel. Afterwards, the court asked Dunn if he wished to question the prospective jurors. Dunn responded, "If you could let me know what it is I'm supposed to be inquiring of...." (Emphasis added.) After Dunn expressed confusion, the court called Dunn and the prosecutor to the bench.
The court held a bench conference on the record, indicated that she had allowed Dunn's retained counsel to withdraw and noted, after reviewing the minutes, "on June 24, 1996, Mr. Dunn was here before Judge Butler who said that he was ... would be representing himself. He was notified on June 24, 1996, that his trial was fixed for the September criminal petit jury term." Dunn protested that he had not said he wanted to represent himself. When asked if he wanted to by the court, he responded, "Well, I don't have a choice, but I'm not prepared today to represent myself." (Emphasis added.)
The court stated that Dunn's conduct constituted a waiver of the right to counsel, particularly since his case had been set for trial on at least two other occasions. The court stated that Dunn "ha[d] been notified specifically as late as June 24, 1996, that his trial date would be on this date, and therefore, we will proceed."
During cross-examination of one witness, Dunn asked if he could "have time to obtain the documents that I really need as far as proving that he did have the knowledge." (Emphasis added.) The district court denied the request and stated, "We had a hearing in 1993 where Judge Whitten informed you, you said you did not want the indigent defender to represent you, that you had to have your own attorney or represent yourself. You've known since 1993 that you would be representing yourself...." However, the 1993 hearing arose in a separate proceeding in another offense to which Dunn was charged.

DISCUSSION

Assignments of Error # 1-# 4: Self-representation
The accused in a criminal proceeding has the right to assistance of counsel for his defense. U.S. Const. amends. VI, XIV; La. Const. art. I, § 13; Gideon v. Wainwright, *491 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
A valid waiver of the right to counsel must be knowing and intelligent. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open. Id.
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296, 1298 (La.1980). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Id. Before a trial judge can allow a defendant to represent himself, he must determine whether defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. Id.
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); State v. Strain, 585 So.2d 540, 542 (La.1991).
A defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Seiss, 428 So.2d 444, 447 (La.1983). The accused's unquestioned right to legal representation at his trial cannot be manipulated by him, by attempts at last-minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. City of Baton Rouge v. Dees, 363 So.2d 530, 531 (La.1978). A defendant's refusal to proceed with appointed counsel and to retain counsel on his own may constitute a waiver of the right to counsel. See State v. Harper, 381 So.2d 468, 471 (La.1980); State v. McGowan, 359 So.2d 972, 974 (La.1978); State ex rel. Johnson v. Maggio, 449 So.2d 547, 549 (La.App. 1st Cir.), writ denied sub nom., State v. Johnson, 450 So.2d 354 (La. 1984). If an accused repeatedly fails to retain counsel for trial, or if he appears without counsel after being clearly and unequivocally warned by the trial court that the case will be tried regardless, such fact may support a finding of implied waiver. State v. Wisenbaker, 428 So.2d 790, 793 n. 10 (La.1983).
In State v. Harper, supra, the defendant successfully sought to relieve his court-appointed counsel. He asked to have counsel appointed from the "Civil Liberties Union." The court instructed the defendant to retain counsel or represent himself, and instructed an indigent defender to assist the defendant at trial. The defendant appeared at trial without counsel. The defendant insisted he neither wanted to represent himself nor to accept the representation of the appointed indigent defender. The court held that the defendant's refusal to accept the assistance of appointed counsel amounted to a waiver of his right to the assistance of counsel. See Harper, 381 So.2d at 471.
In State v. Batiste, 96-0526 (La.App. 3d Cir. 12/11/96), 687 So.2d 499, in eleven court appearances over the course of two years, the defendant informed the court on eight occasions that he had retained or would retain counsel, yet failed to do so. He obtained three continuances of trial for the purpose of retaining counsel; moreover, the state invoked three hearings in an attempt to have the defendant choose to be represented by an indigent defender or retain his own counsel. The trial court called the case for trial and appointed an indigent defender to represent the defendant. The defendant refused the assistance of the indigent defender and insisted again that he would retain counsel. The trial court set the trial for the following *492 day. When the defendant again appeared without counsel, the judge proceeded with trial. The court of appeal held that the defendant had impliedly waived his right to counsel. See Batiste at pp. 9-10, 687 So.2d at 504-05.
In State v. Mitchell, 580 So.2d 1006 (La. App. 3d Cir.1991), writ denied, 613 So.2d 969 (La.1993), the defendant was repeatedly given the opportunity to obtain his own counsel or to accept the appointed counsel made available to him. On each occasion, he reversed his previous decision, and never retained private counsel. The trial judge eventually ordered the trial to proceed, ordering an indigent defender to assist the defendant during the trial. The court of appeal held that the defendant's conduct constituted an implied waiver of the right to counsel. See id. at 1009. See also State v. Jones, 565 So.2d 1023 (La.App. 1st Cir.1990), writ denied sub nom., State ex rel. Jones v. State, 585 So.2d 565 (La.1991) (defendant repeatedly rejected appointment of indigent defender, deliberately misled the court on numerous occasions concerning his attempts to retain private counsel, and received several continuances for the purpose of obtaining counsel).
In State ex rel. Johnson v. Maggio, 449 So.2d 547 (La.App. 1st Cir.1984), the defendant was advised at arraignment of his right to counsel and instructed to contact the court if he desired appointed counsel. The defendant appeared for trial without counsel. The court refused to continue the trial, but offered to appoint an attorney for the defendant. The defendant refused. The trial proceeded. The court of appeal held that the defendant's actions in continually refusing appointed counsel and failing to retain private counsel amounted to a waiver of his right to counsel. Johnson, 449 So.2d at 549-50.
In this case, Dunn's actions did not warrant forcing him to proceed to trial without an attorney on the charge of simple escape. Dunn replaced his first (appointed) attorney with retained counsel, and the court granted his second (retained) attorney's motion to withdraw because Dunn failed to pay him. When Dunn appeared before Judge Butler without an attorney for the recusal motion, Dunn indicated a willingness to retain a lawyer but indicated that he could not afford one at that time. Although Judge Butler stated, "The record will reflect that at the present time, he's representing himself," Judge Butler did not conduct a full hearing to determine whether Dunn was entitled to another appointed attorney, nor did he determine whether Dunn intended to waive his right to counsel. When Dunn appeared for trial without an attorney, Judge Clason stated that Dunn was "representing himself by prior court order." Judge Clason stated that Dunn had been previously notified that trial was scheduled for that day, and that his appearance without an attorney constituted a waiver of the right to counsel.
The state successfully sought to supplement the record with the transcript of a 1993 proceeding in which Dunn, charged with illegal possession of stolen things, elected to represent himself and the trial judge informed him of the dangers and disadvantages of self-representation. This transcript adds nothing to the present inquiry, for it does not concern Dunn's self-representation on the instant charge. The bill of information charging defendant with the instant offense was not filed until September 14, 1995, approximately two years after the 1993 hearing. Defendant was not arraigned in the instant matter until March 5, 1996. The 1993 hearing, held in a separate matter, is irrelevant on review of this matter. We would err in finding that Dunn validly waived right to counsel based on that 1993 hearing.
We find that the trial court erred in failing to appoint Dunn an attorney to represent, or at least assist, him during trial or to continue the trial. Dunn's behavior did not reach the level of abuse and delay exhibited by the defendants in the decisions cited herein. Judge Clason's statement that trial of this matter had been scheduled twice prior to September, 1996, is not supported by the record. The record reflects that the only previous setting of this matter for trial was in May, 1996, when Dunn appeared with newly retained counsel. The transcript of that hearing does not indicate that Dunn had hired counsel in an attempt to prolong this matter or delay trial. Neither Judge Clason *493 nor Judge Butler informed Dunn of the dangers and disadvantages of self-representation. Dunn was never explicitly warned that he would be forced to proceed to trial without an attorney if he did not retain one or accept appointed counsel. Moreover, Judge Clason incorrectly assumed that Dunn had expressed a desire to represent himself when he appeared before Judge Butler and incorrectly concluded, based on the minutes of the June 24, 1996 hearing and the statements of a deputy sheriff and a minute clerk, that Judge Butler had determined that Dunn had knowingly and intelligently waived the right to counsel. In fact, all the defendant's actions indicate that he did not wish to represent himself. On this record, we do not find that Dunn's behavior was an express or, even, implied waiver of the right to counsel.

CONCLUSION
The right of an accused to be represented by counsel is so fundamental that court should carefully scrutinize each record raising that issue before determining that a waiver of counsel is valid. See Gideon v. Wainwright, supra. For the foregoing reasons, we reverse defendant's conviction and remand this matter for new trial.
Discussion of the remaining assignments of error is pretermitted by our finding on the issue of self-representation.
REVERSED and REMANDED.
BROWN, J., dissents with reasons.
GASKINS, J., dissents for reasons assigned by BROWN, J.
BROWN, Judge, dissenting,
For the reasons set forth in the original opinion, I dissent, but with some additional comments.
The transcript shows clearly that Dunn did not protest self-representation; rather, the colloquy with the court was as follows:
THE COURT: ... Mr. Dunn has raised this issue saying, he at this time does not want to represent himself....
DUNN: I didn't say I didn't want to represent myself. I said I haven't went through a proceeding to grant me the right to represent myself....
Obviously, Dunn was fully cognizable of his rights and of the procedure utilized when he was allowed to represent himself on a previous occasion. We should not ignore the 1993 proceedings. It was immediately after these proceedings that Dunn committed this crime by escaping.
In State v. Jones, 28,929 (La.App.2d Cir. 04/02/97), 691 So.2d 858, this court concluded that a prior conviction for armed robbery resulting in a sentence without benefit of parole indicated that defendant had a full understanding of the consequences (without benefit of parole) of his guilty plea (to armed robbery). In that case, the trial judge failed to inform the accused during his guilty plea that any sentence would be without benefit of parole.
The following facts demonstrate Dunn's knowledge of his rights and his intent to manipulate and obstruct the orderly progression of the case.
 The trial court's thorough recitation of the dangers of self-representation in 1993;
 Dunn's commission of the present crime in 1993;
 Dunn's refusal in 1993 and in the instant case to accept a court-appointed attorney;
 Dunn's dismissal of the court-appointed attorney and substitution of retained counsel who obtained a continuance of the trial;
 After getting a trial delay, Dunn's retained counsel withdrew for nonpayment of his fee;
 Dunn's release on bond and subsequent employment;
 Dunn's notification in court of the trial date and being told to be ready; and,
 Dunn's statement to the trial judge that "I didn't say I didn't want to represent myself."
The trial court was not wrong. Dunn's behavior was abusive and for the purposes of delay.
NOTES
[1] This proceeding and the trial were handled by different judges.
[2] The state did not appeal this ruling.