505 So.2d 981 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Dwight SIMMS, Defendant-Appellant.
No. CR86-1020.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*982 Steve Gunnell, Cassidy & Gunnell, Jennings, for defendant-appellant.
Wendell Miller, Dist. Atty., D. Keith Wall, Asst. Dist. Atty., Jennings, for plaintiff-appellee.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
*983 WILLIAM A. CULPEPPER, Judge Pro Tem.
Defendant, Dwight Simms, was charged by bill of information with attempted unauthorized entry of an inhabited dwelling in violation of LSA-R.S. 14:27 and LSA-R.S. 14:62.3. He was found guilty as charged by a six person jury on May 14, 1986. On August 18, 1986, the defendant was sentenced to serve three years at hard labor, to run consecutively with the sentence defendant is currently serving on parole. Defendant now appeals, asserting ten assignments of error. We affirm.

FACTS
On November 19, 1985, the defendant and three companions were traveling to Houston when their car ran out of gas on the interstate near Welsh, Louisiana. Defendant left the car carrying a bat and went to a house on the other side of the highway. The owner of the house, Roger Broderick, returned home and noticed the car on the side of the interstate. As he approached the house, someone in the car started honking the horn. When Broderick turned into the driveway, he noticed a man standing at his side window. The man ran, and Broderick discovered that the window screen had been removed, the glass was broken, and the latch was open. Broderick found a baseball bat below the window. The police arrived and investigated the car on the interstate and its occupants. The police detective noticed fresh mud on defendant's shoes. In a later investigation, the detective found footprints in the ditch between the road and the victim's house which matched defendant's shoe prints. He also discovered another bat near the spot where the broken-down car had been.
One of the occupants of the car testified that defendant left the car with a bat and headed toward a house after the car broke down. She also testified that when defendant returned, he said, "I almost got caught." Another of defendant's companions testified that defendant "carried a bat across the overpass to break into them people's house."

ASSIGNMENT OF ERROR NUMBER 1
By assignment of error number one, defendant argues that the trial court erred in admitting certain testimony by defendant's companions, regarding allegedly inculpatory statements made by the defendant, because the statements were not disclosed to defendant prior to trial pursuant to LSA-C. Cr.P. art. 729.3. The trial court found that these statements, which concerned the defendant's activity prior to, during, and immediately after the crime, were part of the res gestae and therefore admissible under an exception to the hearsay rule.
LSA-R.S. 15:447 defines res gestae as "events speaking for themselves under the immediate pressure of the occurrence." In Louisiana, the res gestae doctrine is broad and includes not only the spontaneous utterances and declarations made before or after the crime, but also the testimony of witnesses pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693 (La.1981). The testimony of the witnesses in this case as to defendant's actions before, during, and after the crime clearly fall within the res gestae exception to the hearsay rule and are admissible.
Defendant also contends that the State's failure to give the defendant notice of these statements prior to trial constituted reversible error. It has been consistently held that the State is not required to give notice to the defendant of its intent to use res gestae statements. State v. Barnes, 414 So.2d 711 (La.1982); State v. Belgard, 410 So.2d 720 (La.1982); State v. Smith, 466 So.2d 1343 (La.App. 3 Cir. 1985).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment, defendant contends that the trial court erred in denying his motion for a mistrial, when one of *984 the State's witnesses referred to the defendant's prior criminal record in front of the jury. The remark was in response to a defense attorney's question to which the witness answered, "If you was sent to Angola for twenty years, you have no other choice but to do right when you get out." The court admonished the jury after overruling defense counsel's motion for a mistrial.
An admonition is sufficient to cure any prejudice resulting from a prosecution witness' remarks concerning evidence of other crimes of the defendant, as to which evidence would not be admissible, where the witness' remarks were elicited by defense counsel and there was no specific intention to prejudice the defendant. State v. Jones, 451 So.2d 1181 (La.App. 1 Cir.1984). Such testimony is not chargeable against the State so as to provide a ground for reversal of a conviction. State v. Jackson, 396 So.2d 1291 (La.1981).
Under LSA-C.Cr.P. art. 771, it is within the trial court's sound discretion to grant a mistrial if he believes that an admonition is insufficient to assure the defendant a fair trial. Jones, supra. Since there has not been a showing that defendant was prejudiced by this remark, we find that the trial judge's admonition was sufficient in this case.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
By assignment of error number three, the defendant contends that the trial court erred in denying his motion to "recuse" his attorney. The defendant did not complain about his attorney's performance until the day of jury selection, when he apparently was dissatisfied with the manner in which his court-appointed attorney questioned the prospective jurors.
A defendant's right to the assistance of counsel is guaranteed by both federal and state law. U.S. Const.Amend. VI; La. Const. of 1974, Art. I, § 13; La.C.Cr.P. art. 515. However, the Louisiana Supreme Court has consistently held that this right cannot be used to obstruct the orderly procedure of the courts. State v. Seiss, 428 So.2d 444 (La.1983); State v. Champion, 412 So.2d 1048 (La.1982); State v. Johnson, 389 So.2d 1302 (La.1980).
Defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Seiss, supra; State v. Leggett, 363 So.2d 434 (La.1978). Absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date trial is to begin, with the attendant necessity of a continuance and its disrupting complications. State v. Seiss, supra; State v. Leggett, supra.
Once the trial date has arrived, the question of withdrawal of counsel largely rests with the discretion of the trial judge. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for withdrawal of counsel made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, supra.
Since the defendant waited until the middle of voir dire to express dissatisfaction with his attorney, when he had sufficient time to hire other counsel, we find that the trial judge was not clearly wrong in denying his request for withdrawal of counsel. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
In assignment of error number four, the defendant contends that the trial court erred in removing him from the courtroom during jury selection.
La.C.Cr.P. art. 831 states that "a defendant charged with a felony shall be present... at the calling, examination, challenging, impanelling, and swearing of the jury..." In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the United States Supreme Court established that the defendant's Sixth Amendment right to be present at trial was not absolute. The court explicitly held that:
"a defendant can lose his right to be present at trial if, after he has been *985 warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.3" (Footnote omitted.)
Illinois v. Allen, supra, 90 S.Ct. at page 1060.
The Louisiana Supreme Court has upheld convictions in which the defendant was removed from the courtroom for disruptive behavior and was placed in an adjoining room where he was able to hear the remainder of the proceedings. State v. Lee, 395 So.2d 700 (La.1981); State v. Rochon, 393 So.2d 1224 (La.1981).
In this case, defendant frequently interrupted the jury selection proceeding by protesting the method of questioning used by his attorney and demanding a racially equal jury. After repeated warnings by the trial judge, defendant was removed from the courtroom and placed in a room where he was able to hear the proceedings. Under federal and state law, the defendant waived his right to be present at trial. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 5
In the fifth assignment of error, defendant asserts that the trial court erred in allowing the State to use its peremptory challenges to excuse a juror allegedly based solely on race. Defendant cites LSA-C.Cr.P. art. 795(B), which states that a peremptory challenge by the State shall not be based solely on race.
The prosecutor stated that he dismissed the juror because of her contradictory responses to questions involving the State's burden of proof which made the State feel that she would have difficulty applying the proper burden of proof standard. He also noted that out of the three jurors who had been selected at that time, one was black.
In Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant may establish a prima facie case of purposeful discrimination in jury selection solely on evidence concerning the prosecutor's peremptory challenges at the defendant's trial as follows:
"the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482], at 494, 97 S.Ct. [1272], at 1280 [51 L.Ed.2d 498 (1977)] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, supra, 345 U.S. [559], at 562, 73 S.Ct. [891], at 892 [97 L.Ed. 1244 (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
* * * * * *
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."
Batson v. Kentucky, supra, at page 1723.
This court has recognized the application of Batson to cases tried in this State after it was rendered. State v. Newman, 491 So.2d 174 (La.App. 3 Cir.1986). Under Batson, the defendant has not met his burden of showing purposeful discrimination in this case, especially since one of the three jurors selected at the time of his objection was a member of his race. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 6
By this assignment, defendant contends that the evidence adduced at trial was insufficient to sustain his conviction. *986 The test for reviewing the sufficiency of the evidence in a criminal conviction is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For a conviction to be upheld, a reasonable trier of fact, viewing the evidence in a light most favorable to the prosecution, must be able to find each element of the crime proven beyond a reasonable doubt.
The defendant bases his argument on the fact that the victim could not identify the defendant as the man he saw outside his home.
The victim testified that he saw a black man at his window, that the screen was torn off, and the glass was broken. The victim noticed that the man was wearing a light-colored long-sleeve shirt, dark trousers, and white shoes. He also testified that he found a baseball bat under the window, and the defendant had no permission to enter his house.
The police detective testified that the defendant had fresh mud on his tennis shoes when he first approached the scene. He further testified that the shoe prints in the ditch, between the victim's house and defendant's broken-down vehicle, matched defendant's shoes. He also noticed that the defendant was wearing clothes matching the victim's description of the perpetrator's.
Two of defendant's companions testified that the defendant went toward the victim's house carrying a bat. One testified that she blew the car horn to warn the defendant when she saw the car approaching the house. Shortly thereafter, defendant returned to the car, stating that he was "almost caught."
All of this testimony taken together, viewed in a light most favorable to the prosecution, establishes beyond a reasonable doubt that the defendant committed the crime for which he was convicted. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBERS 7-9
By these assignments the defendant argues that his sentence is excessive and erroneous. Specifically, the defendant asserts that the trial judge erred in relying on a presentence report that failed to contain a report from the defendant's parole/probation officer and which contained a recommendation for maximum sentencing by the parish sheriff.
A sentence is excessive if it is so grossly disproportionate to the crime committed, in light of the harm to society, as to shock the court's sense of justice. State v. Smack, 425 So.2d 737 (La.1983); State v. Smithey, 441 So.2d 837 (La.App. 3 Cir.1983).
The trial judge is given wide discretion in imposing sentences within statutory limits, and sentences so imposed should not be set aside absent manifest error. State v. Smith, 437 So.2d 252 (La.1983); State v. Cotten, 438 So.2d 1156 (La.App. 1 Cir. 1983), writ den., 444 So.2d 606 (La. 1984).
The defendant was sentenced to serve three years at hard labor, the maximum sentence under the law, to run consecutively with the sentence for which the defendant was currently serving on parole. Maximum sentences are generally reserved for the most serious violation of the charged offense and the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La. 1982).
In sentencing the defendant, the trial judge was influenced by the fact that this was the defendant's third felony offense, and that the defendant had an extensive prior criminal record. The trial judge expressed a willingness to consider any mitigating factors relevant to this case, but noted that there were none presented because the defendant refused to cooperate with his probation/parole officer.
It is proper to consider an extensive prior criminal record in determining the sentence of the defendant. See State v. Cook, 465 So.2d 825 (La.App. 2 Cir.1985), writ den., 467 So.2d 532 (La.1985); State v. Williams, 457 So.2d 902 (La.App. 3 Cir. 1984), writ den., 461 So.2d 313 (La.1984). Considering defendant's criminal adult and juvenile records, we find that the trial court was not manifestly in error in determining that defendant was one of the *987 worst kinds of offenders and in sentencing him to the maximum penalty.
We also find that defendant's contention that the trial court erred in relying on a presentence investigation that failed to contain a report from defendant's parole officer is meritless, since the record reflects that the reason the parole officer did not file a report was because the defendant was uncooperative. Defendant's argument that the trial judge erred in considering the sheriff's recommendation for sentencing is likewise without merit, since there is no indication that the trial judge gave any weight to this statement in sentencing the defendant. A trial judge is not bound by any sentencing recommendation in the presentence investigation. State v. Smith, 457 So.2d 1282 (La.App. 3 Cir.1984). These assignments of error are without merit.
For the reasons assigned, the conviction and sentence appealed are affirmed.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.