744 So.2d 718 (1999)
STATE of Louisiana, Appellee,
v.
Terry FLANAGAN, Appellant.
No. 32,535-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1999.
*720 Terry Flanagan, In Proper Person.
*721 Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, C. Glenn Fallin, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, C.J., BROWN & PEATROSS, JJ.
PEATROSS, J.
This criminal appeal arises from the conviction of Defendant, Terry Flanagan, as an habitual offender. Defendant seeks reversal of his adjudication as a fourth offender and of his life sentence. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY
Defendant was convicted of simple burglary in Bienville Parish on February 19, 1998, and sentenced on April 8, 1998. However, on March 20, 1998, prior to his sentencing hearing on the 1998 simple burglary conviction, the State filed an habitual offender bill of information alleging that Defendant should be adjudicated a sixth-felony offender, pursuant to La. R.S. 15:529.1(A)(1)(c)(ii), and sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. The following is a list of the prior offenses allegedly committed by Defendant and listed in that bill of information:
a. Conviction for Attempted Armed Robbery, April 13, 1978, Criminal Docket No.: 18,315, Bienville Parish, Louisiana.
b. Conviction for Distribution of Cocaine (two counts), November 30, 1989, Criminal Docket No.: 27,839, Jackson Parish, Louisiana.
c. Conviction for Simple Criminal Damage to Property (more than $500.00), February 20, 1991, Criminal Docket No.: F9010, West Carroll Parish, Louisiana.
d. Conviction for Simple Burglary, February 20, 1991, Criminal Docket No.: F9011, West Carroll Parish, Louisiana.
e. Conviction for Possession of Marijuana (3rd offense), August 19, 1996, Criminal Docket No. CR-95-190-2A, Ashley County, Arkansas.
f. Conviction for Simple Burglary, February 19, 1998, Criminal Docket No.: 32,186, Bienville Parish, Louisiana.
At his April 8, 1998 sentencing hearing on the 1998 simple burglary conviction, Defendant, who was represented by Paul Garner of the Indigent Defender Board ("IDB"), waived reading of the habitual offender bill and remained silent, thereby pleading not guilty to the charges alleged. Although the trial judge discussed holding the habitual offender hearing within 60 days of the sentencing hearing (thus, presumably in June 1998), the habitual offender hearing in this matter was not held until December 21, 1998. The minutes reflect that the habitual offender hearing, which was originally set for September 8, 1998, was continued, without date, by the State.
At the habitual offender proceeding, Defendant appeared with Mr. Garner, his IDB attorney who had also served as his trial and sentencing counsel on the February 19, 1998 simple burglary conviction. Defendant told the trial judge that he no longer wanted to be represented by Mr. Garner. Defendant explained that he wanted a different lawyer because Peggy Sullivan, an attorney employed by the Louisiana Appellate Project who wrote the appeal brief following his February 19, 1998 simple burglary conviction, argued on appeal that Mr. Garner was ineffective because he failed to move for reconsideration of sentence after Defendant was sentenced for his simple burglary conviction.[1]
The trial judge denied Defendant's request for removal of Mr. Garner and appointment of new counsel, noting that Defendant had no right to different appointed counsel. The trial judge then asked Defendant *722 if he wished to represent himself in this matter. Defendant repeatedly said that he did not want to represent himself and that he needed a different attorney. Defendant then began to continually request the appointment of James Beal, another attorney with the IDB, who had successfully represented Defendant on a previous drug charge.
In response, the trial judge told Defendant that his only options were to either accept representation by Mr. Garner or to represent himself. Defendant then told the trial judge that he was "not comfortable enough to take this to trial and that he needed a different attorney." The trial judge again denied his request for a different attorney and explained to Defendant that there were certain abilities that he did not possess, but that a lawyer did, and that his interests would be better protected if he were represented by a lawyer. Defendant indicated that he understood this and again told the trial judge that he did not wish to represent himself, but wished to have a different lawyer from the IDB appointed. Defendant continued with his request to be represented by different counsel, specifically by James Beal. Defendant said he was "not comfortable enough to go by myself" and that he wasn't "capable of getting up here challenging [the Assistant District Attorney] as far as the habitual hearing."
The State argued that Defendant was simply making a plea for a new lawyer as a delay tactic. The State argued that Defendant had known for eight months, from April 1998 until December 1998, that the habitual offender matter was pending and that he had plenty of time to notify the trial judge, through a written motion, about his dissatisfaction with his lawyer. Additionally, the State reminded the trial judge that Defendant had already complained in this case about another IDB lawyer, Roy Lilly, and that the trial judge had removed him from the case and replaced him with Mr. Garner.
Defendant again told the trial judge that he was not comfortable representing himself and that he was not comfortable with the representation that would be provided him by Mr. Garner. Defendant specifically noted that he no longer trusted Mr. Garner and that he was afraid that Mr. Garner would "mislead" him during the course of the habitual offender hearing. Defendant asked for a continuance to prepare to represent himself or to find another lawyer in this matter, but the trial judge denied the motion. The trial judge took a recess to let Defendant think about the situation.
Following the recess, the trial judge noted that Defendant continued to say he was unable to represent himself and the trial judge stated "the court would agree with that, that you need counsel at this point." The trial judge then explained to Defendant that the habitual offender hearing would involve the calling of witnesses and the presentation of evidence, including the inherent task of laying a foundation to ensure the introduction of the evidence elicited. Defendant responded that he did not understand the trial judge's statement about laying a foundation for the proper introduction of evidence. In response to questions by the trial judge, Defendant informed him that he was 39 years old and had a 12th grade education. Defendant's handwritten letters indicated a low level of literacy.
Defendant again told the trial judge he needed a lawyer, but not Mr. Garner. The trial judge then said he recognized Defendant's right to represent himself. Defendant said he wanted a lawyer and was not ready to represent himself. He again asked for the appointment of James Beal. The trial judge then dismissed Mr. Garner, relieving him of his responsibilities in the case. Mr. Garner informed the trial judge that he would be accessible during the trial so that he could be contacted easily should Defendant change his mind. The trial judge ordered that the case proceed. Defendant objected to the hearing.
*723 The State questioned Douglas Stokes, a former IDB attorney in Jackson Parish. Mr. Stokes testified regarding his representation of Defendant in 1989 when Defendant pled guilty to two counts of distribution of cocaine and was able to identify Defendant as the same person that he represented on that conviction. Defendant did not ask Mr. Stokes any questions and objected to Mr. Stokes' testimony, again requesting a lawyer. The objection was overruled. Russell Davis, a former ADA in Bienville Parish, testified regarding his prosecution of Defendant in 1978 for attempted armed robbery. Mr. Davis identified Defendant as the person convicted in 1978 for that crime. At the conclusion of the direct examination of Mr. Davis, Defendant again objected to the entirety of the witness' testimony and reiterated his request for a lawyer.
The next witness called by the State was Deputy Lucky Raley. Deputy Raley was a patrol deputy in Bienville Parish in 1977 and arrested some of the suspects in the attempted armed robbery for which Defendant was convicted in 1978. Additionally, Deputy Raley testified that, when he booked Defendant into the jail for the 1998 simple burglary conviction, Defendant admitted that he was the same person that Deputy Raley had arrested and booked in 1977 for armed robbery. He further testified that he was in the courtroom when Defendant was convicted of the 1998 simple burglary. Again, Defendant did not ask the witness any questions and asked for a lawyer.
Mack Lancaster, an ADA in West Carroll Parish, testified next regarding Defendant's 1991 guilty pleas to charges of simple criminal damage to property and simple burglary. Mr. Lancaster was able to identify Defendant as the same person who pled guilty to, and was convicted of, those 1991 crimes. Just as before, Defendant did not ask any questions of the witness.
Finally, the State called Audie Edwards, a probation and parole officer with the State of Louisiana, to testify regarding the preparation and contents of the pre-sentence investigation report in the instant matter. Mr. Edwards testified that Defendant was originally convicted in 1978 of attempted armed robbery in Bienville Parish and sentenced to 20 years at hard labor. Defendant was released from Wade Correctional Center on November 25, 1988. He was arrested for simple criminal damage to property and simple burglary in West Carroll Parish on July 17, 1989, was convicted of same on February 20, 1991, and was sentenced to six years. Defendant was arrested for distribution of cocaine (two counts) on June 30, 1989, in Jackson Parish, was convicted of those charges on November 30, 1989, and was sentenced to five years at hard labor to run concurrently with the sentences he received in West Carroll Parish for the simple burglary/simple criminal damage to property convictions. He was released on good time parole on April 16, 1993, and his parole expired on August 4, 1995. Defendant was next arrested in Arkansas on October 16, 1995, for possession of a controlled dangerous substance with intent to distribute. On August 19, 1996, he pled guilty to possession of marijuana, third offense, which is a class C felony in the state of Arkansas, and received fines, but no jail time. He was next convicted of possession of cocaine in Jackson Parish on June 20, 1996, but that conviction was reversed by this court on April 2, 1997. See State v. Flanagan, 29,316 (La.App.2d Cir.4/2/97), 691 So.2d 866.[2] His last conviction was for simple burglary on February 19, 1998, in Bienville Parish. Defendant objected to Mr. Edwards' testimony, but did not ask the witness any questions.
The State then rested its case and Defendant did not put on any evidence. He again requested that he be provided a lawyer to represent him in these proceedings. He reiterated his request for a continuance *724 so that he could attempt to prepare for the hearing and/or hire a lawyer to represent him. Defendant then argued that he had not pled guilty to anything in West Carroll Parish and that the State had not proven that he had committed any of the offenses listed in the bill of information. The trial judge denied Defendant's motions and adjudged him a fourth-felony offender and sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence. Additionally, the trial judge vacated the original 12-year sentence for the 1998 simple burglary conviction.
On appeal, Defendant, in proper person, asserts the following assignments of error, which are listed verbatim so as not to misinterpret their meaning:
1. Was the trial court erred in finding that the petitioner waived his right to counsel?
2. Was the state prosecution erred when it failed to present a valid plea agreement to support adjudicating petitioner as a fourth felony offender in states exhibit # 5?
3. Was the trial court erred in not specifying which count was used to enhance the penalty?
4. Was the trial court erred in adjudicating petitioner a fourth felony offender where the state failed to adequately establish his identity as the individual previously convicted in the out-of-state conviction?
5. Was the trial court erred in not stating date of discharge in petitioner out-of-state conviction?
6. Was the trial court erred in not stating if out-of-state conviction would amounted to a felony in committed in Louisiana?
7. Was the trial court erred in excepting multiple offender, whereas person sentenced to six months suspended and fines?
8. Was the trial court erred when it did not inform the petitioner of the nature of the allegations in the habitual offender bill or of his rights to be tried as to the truth prior to the trial, together, and trial courts failure to require petitioner to say whether the allegations was true?

DISCUSSION

Assignment of Error No. 1
Defendant complains that the trial court erred in depriving him of his constitutional right to assistance of counsel. U.S. Constitutional Amendment VI, as well as Louisiana Constitution article I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. White, 325 So.2d 584 (La.1976); State v. Moore, 29,212 (La. App.2d Cir.1/22/97), 687 So.2d 647. The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta, supra; Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); State v. Strain, 585 So.2d 540 (La.1991). A defendant may waive his right to counsel "if he knows what he is doing and his choice is made with eyes open" and the record reflects his awareness of the dangers and disadvantages of self-representation. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); State v. Harper, 381 So.2d 468 (La.1980).
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed *725 by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Harper, supra. The determination of whether a defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Johnson v. Zerbst, supra; State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir.1991), writ denied, 600 So.2d 634 (La.1992).
Further, the adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, supra. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. DeGrate, 25,732 (La.App.2d Cir.3/30/94), 634 So.2d 965, writ denied, 94-1362 (La.10/7/94), 644 So.2d 630.
As a general proposition, an accused in a criminal trial not only has the right to counsel, but specifically, the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If a defendant is indigent, as in the case sub judice, he has the right to court-appointed counsel. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). The indigent defendant does not have the right, however, to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973); State v. Thomas, 28,790 (La.App.2d Cir.10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.4/25/97), 692 So.2d 1081. An indigent defendant's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so; but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Champion, 412 So.2d 1048 (La.1982); State v. Jones, 376 So.2d 125 (La.1979); City of Baton Rouge v. Dees, supra; State v. Thomas, supra; State v. Dunn, 30,269 (La.App.2d Cir.2/25/98), 713 So.2d 479; writ dismissed, 98-0978 (La.1/15/99), 735 So.2d 644; State v. Simms, 505 So.2d 981 (La. App. 3d Cir.1987).
A defendant must exercise his constitutional right at a reasonable time, in a reasonable manner and at an appropriate stage in the criminal justice system. State v. Seiss, 428 So.2d 444 (La.1983); State v. Champion, supra. A defendant's failure to secure his own counsel and refusal to accept court-appointed counsel may result in an implied waiver of his right to counsel. State v. Johnson, 450 So.2d 354 (La.1984); State v. Harper, supra; City of Baton Rouge v. Dees, supra; State ex rel. Johnson v. Maggio, 449 So.2d 547 (La.App. 1st Cir.1984), writ denied, 440 So.2d 1336 (La. 1983).
The question presented in the case sub judice is whether the trial judge erred in presenting Defendant with a choice of accepting the assistance of appointed counsel, Mr. Garner, or proceeding pro-se, and in requiring Defendant to proceed with the hearing on the habitual offender bill after he rejected both alternatives. The same dilemma was faced by this state's supreme court in State v. Harper, supra.
In Harper, the defendant was charged with four counts of simple burglary. The defendant declared his indigence and was appointed a lawyer from the IDB who represented him at the arraignment and the preliminary examination. The defendant then began to file his own motions and stated during his next court appearance that he no longer wanted the IDB to *726 represent him and that he wished to have counsel appointed from the Civil Liberties Union to represent him. The trial judge informed Harper that, if he did not want the IDB to represent him, he had to retain his own lawyer or represent himself at his trial. Harper appeared at trial without counsel and the trial judge again informed him that he could either accept representation from the IDB or represent himself. When Harper told the trial judge that he wanted neither one, he was then made to represent himself and was ultimately convicted and sentenced.
On appeal, Harper complained that he was denied his Sixth Amendment right to counsel because he was forced to choose between two alternatives that he did not want. The court found as follows:
In this case, there can be no doubt that the defendant knew of his right to the assistance of court appointed counsel. Such appointed counsel did in fact assist the defendant in preliminary matters. Counsel was available to the defendant at trial and the court made it clear to the defendant that Mr. McConnell was present at trial in order to give him whatever assistance he requested. The defendant chose to forgo that assistance. After a careful examination of the record we conclude that the defendant's decision was made with the knowledge that appointed counsel was readily available to him. The refusal of appointed counsel was a knowing and voluntary waiver of his right to the assistance of counsel.
Thus, the supreme court in Harper determined that the defendant's actions constituted an implied waiver of his right to counsel and affirmed his conviction and sentence.
With some minor distinctions, we find the case sub judice to be factually similar to Harper, supra. Although the defendant in Harper did not complain that he was dissatisfied with the effectiveness of the representation he received from the IDB, Defendant in the case sub judice raised that issue. This court disposed of that issue, however, in State v. Flanagan, supra, wherein we determined that Mr. Garner's failure to attack the severity of Defendant's sentence in the form of post conviction relief was harmless error. We did not find that such harmless error rose to the level of effectively depriving Defendant of his Sixth Amendment right to counsel. The trial court cannot be called upon to appoint counsel other than the one originally appointed merely to please the desires of the indigent accused in the absence of an adequate showing that the court-appointed attorney is inept or incompetent to represent the accused. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir. 1987), writ denied, 505 So.2d 1139 (La. 1987).
In addition, in Harper the trial court did not dismiss the IDB attorney as did the trial judge in the case sub judice.[3] Defendant, however, made it abundantly clear that he did not wish to have the representation of Mr. Garner. This is shown by Defendant's following testimony, which occurred after a lengthy colloquy in which Defendant specifically asked for the representation of James Beal:
By the Court: But if we proceed, you'd rather [Mr. Garner] representing you than nobody?
By Defendant: No.
By the Court: Is that the question?
By Defendant: If we proceed, I do not want [Mr. Garner].
. . .
By the Court: Would you object to [Mr. Garner] assisting you during this matter then?
By Defendant: Well, I just need to well, he can't assist me. He ain't *727 going to say nothing in my favor. He can't assist me.
. . .
By the Court: Would you like five minutes to go back and reconsider this, Mr. Flanagan?
By Defendant: As far as my mind, it's finalized. I don't want him under no circumstances.
Court was then recessed briefly by the trial judge in order to give Defendant time to reconsider; and, after the recess, Defendant announced that he had not changed his mind. The trial judge went on to question Defendant as to his age, education, experience, etc., as it applied to Defendant's self-representation and explained the rights and duties he would have in his self-representation. Defendant continued to complain that he wanted representation, but not that of Mr. Garner:
By the Court: You do understand the need that you have for a lawyer then? There is no doubt in your mind about that?
By Defendant: Yes. Yes.
By the Court: Okay. And you do not wish Mr. Garner to represent you then?
By Defendant: That's correct.
. . .
By the Court: Your objection has been made. And you still don't want Mr. Garner?
By Defendant: That's correct.
. . .
By the Court: Do you wish me to discharge Mr. Garner from representing you and do you want to continue at this time?
By Defendant: Yes, yes, that's right, Your Honor.
Defendant alluded that he no longer had trust in Mr. Garner to properly represent him, stating he didn't feel Mr. Garner would assist him and might mislead him; but, no evidence or statements were offered to support this supposition. As previously stated, we find any distinction between Harper and the case sub judice to be minor and inconsequential.
As this court held in State v. Dunn, supra, the right of an accused to be represented by counsel is so fundamental that this court should carefully scrutinize each record raising that issue before determining that a waiver of counsel is valid. We find that Defendant is well versed in the intricacies of court proceedings, having been through more than ten such proceedings in his lifetime. The record reflects that, between the ages of 17 and 39, Defendant spent a total of approximately 15 years in prison for various crimes and was arrested and tried for at least two others in which no jail time was given or the conviction was reversed. Given this history, the fact that he specifically asked for James Beal, an attorney who had been successful in overturning one of Defendant's previous convictions, and that he had approximately eight months in which to properly file for removal of Mr. Garner, we find it difficult to believe that Defendant was not fully cognizant of the effects of his actions and purposefully manipulated the situation. On this record, we find that Defendant made a knowing and intelligent waiver of his Sixth Amendment right to counsel.

Assignment of Error No. 2
Defendant complains in his next assignment of error that the trial court erred in allowing in evidence of an adjudication of Defendant as a fourth-felony offender lacking a valid plea agreement. Defendant argues that the plea agreement in which he entered a plea of guilty to one count of simple burglary and one count of simple criminal damage to property (more than $500), found in State's Exhibit #5, does not provide a basis for a valid sentence and fails to conform with La.C.Cr.P. art 872, which provides as follows:
A valid sentence must rest upon a valid and sufficient:
(1) Statute;

*728 (2) Indictment; and
(3) Verdict, judgment, or plea of guilty.
Before entering a guilty plea, a defendant must be advised of, and waive, his constitutionally guaranteed right to a jury trial, right to confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Hill, 30,552 (La.App.2d Cir.5/13/98), 714 So.2d 814; State v. Franklin, 30,644 (La.App.2d Cir.5/13/98), 714 So.2d 162. Moreover, the entry of a guilty plea must be knowing and voluntary on the defendant's part. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Hill, supra. Advising the defendant of certain facts beyond the Boykin "triad of rights" bears on the knowing and voluntary nature of the plea. State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La. 1982).
The transcript of Defendant's guilty pleas in docket nos. F90-10 and F90-11, to simple burglary and simple criminal damage to property (more than $500), in West Carroll Parish, Louisiana, on February 20, 1991, indicates that the State informed the trial judge that all of the parties had reached a plea agreement in this matter and Defendant's attorney agreed. The trial judge then questioned Defendant about his age, educational background and employment history and informed him of the maximum penalty he faced for the crimes to which he was pleading guilty. The trial judge then inquired regarding Defendant's representation in this matter, which Defendant indicated was satisfactory.
The State then provided a synopsis of the facts which comprised each crime in this matter. At the conclusion of the synopsis, Defendant agreed that these were the charges to which he was agreeing to plead guilty and he admitted that he was pleading guilty because he had actually committed the offenses. The trial judge informed Defendant that he was waiving his right to trial by jury, his right to confront witnesses and his privilege against self-incrimination. Defendant indicated that he understood that he was waiving these rights and that he wished to plead guilty to the charges. Defendant denied being under the influence of any drugs or alcohol at the time of making this plea and stated that he was entering this plea voluntarily and freely and as a result of his own independent decision. The trial judge then sentenced Defendant to an agreed-upon sentence of six years at hard labor which would run concurrently with any other sentence that he was currently serving.
Clearly, in February 1991, Defendant entered valid guilty pleas to these two predicate offenses, thus resulting in valid convictions and sentences pursuant to La. C.Cr.P. art. 872. He was informed of all of his Boykin rights and waived them and was informed of the maximum sentence to which he was exposed.[4] Defendant made a knowing and intelligent waiver of those rights by pleading guilty while represented by counsel. Defendant told the trial judge that he was satisfied with the representation he received and had not been placed under any pressure or duress to plead guilty. Thus, the trial judge in the instant matter was correct in accepting these convictions as predicate convictions. This assignment is without merit.

Assignment of Error No. 3
Defendant next argues that the trial judge erred in sentencing him as an habitual offender because neither of Defendant's 1989 convictions for distribution of cocaine was specified as being the one used to enhance his habitual offender bill. *729 Defendant was charged, by bill of information dated October 19, 1989, with distribution of cocaine to two separate individuals on the same date. State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), addresses a situation in which several convictions occurred on the same day as a result of a single criminal act. The court in Porter held that where an offender with a prior felony conviction subsequently commits multiple felonies and is thereafter convicted of these subsequent felonies, he is subject to being adjudicated an habitual offender as to each conviction.
In the case sub judice, Defendant was charged with two counts of distribution of cocaine to two separate individuals on the same day. He pled guilty to two counts of distribution of cocaine in exchange for an agreed-upon sentence that apparently ran in tandem with the sentence he was serving for burglary and property damage. Thus, these are multiple convictions arising from separate crimes which just happened to take place on the same day.
Further, it is clear that, for purposes of the habitual offender hearing, the court treated these two convictions as one conviction in its determination that Defendant was an habitual offender. Thus, if this court should find that it was error for the trial court to fail to specify which of Defendant's two convictions it was using to enhance the habitual offender conviction, that error is harmless because the use of one of the convictions was enough to render this defendant an habitual offender and the length of the sentence attached to each conviction does not matter since the resulting sentence given to Defendant was life in either situation. This assignment is without merit.

Assignment of Error Nos.4, 5, 6 and 7
Each of these assignments of error addresses the use by the State of Defendant's conviction for possession of marijuana, third offense, August 19, 1996, Criminal Docket No. CR-95-190-2A, Ashley County, Arkansas, as one of his predicate offenses. Defendant contends that the State failed in its attempt to correctly identify him as the individual convicted of that crime.
Defendant was originally arrested on October 16, 1995, for possession of a controlled dangerous substance with intent to deliver. He entered a plea of nolo contendere to possession of marijuana, third offense, on August 19, 1996. La.C.Cr.P. art. 552(4) specifically provides that a plea of nolo contendere can be used to enhance an habitual offender bill:
A sentence imposed upon a plea of nolo contendere is a conviction and may be considered as a prior conviction and provide a basis for prosecution or sentencing under laws pertaining to multiple offenses, and shall be a conviction for purposes of laws providing for the granting, suspension or revocation of licenses to operate motor vehicles.
Further, it has been held by the supreme court that a plea of nolo contendere is tantamount to an admission of guilt. Louisiana State Bar Association v. O'Halloran, 412 So.2d 523 (La.1982).
In State v. Shelton, 621 So.2d 769 (La.1993), the supreme court set forth the scheme for assigning the burden of proof in habitual offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the state meets this burden, the defendant has the burden to produce some kind of affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically *730 waived his right to trial by jury, his privilege against self-incrimination and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, ... the judge then must weigh the evidence submitted by the defendant and the state to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
In the case sub judice, the State presented the court with a copy of the bill of information, a copy of the judgment and disposition order, as well as a copy of a signed guilty plea statement, which demonstrated to the court that Defendant pled guilty to possession of marijuana, third offense, in Arkansas and was represented by counsel at the time of the plea. The State also presented the witness testimony of Audie Edwards, a probation and parole officer with the State of Louisiana, who testified that the Arkansas possession of marijuana conviction was included in Defendant's pre-sentence investigation report prepared by his office for sentencing in Defendant's February 1998 simple burglary conviction.
Each of these pieces of evidence, along with the witness testimony of Mr. Edwards, proved that Defendant pled nolo contendere to possession of marijuana, third offense, in Arkansas. This same crime would have constituted a felony in Louisiana, pursuant to La. R.S. 40:966(D)(3), as the punishment for that crime is imprisonment with or without hard labor for not more than 20 years. Thus, pursuant to La. R.S. 15:529.1, this conviction may be used to enhance Defendant's habitual offender bill. The evidence introduced by the State shows that Defendant's sentence for this conviction was a $750 fine, a $250 restitution payment and $350 in court costs.
After the State made its showing of proof of conviction, Defendant offered no affirmative proof that he was not the individual who entered a plea of nolo contendere to the charge of possession of marijuana, third offense. In fact, Defendant admitted at the April 1998 sentencing hearing on the simple burglary conviction, which was presided over by the same judge, that he did plead guilty to the marijuana charge, but that it was his understanding that once he agreed to plead guilty and pay the fine, the offense would be stricken from his record. Defendant was unable to produce any paperwork, however, to demonstrate this fact to the court.
The State was able to provide both witness testimony and documentary proof of Defendant's conviction in Arkansas. Defendant was unable to produce any affirmative evidence showing that his rights were infringed upon in the taking of the plea or that a procedural irregularity occurred in the taking of the plea. Furthermore, Defendant was unable to prove that he was not the person who pled nolo contendere to possession of marijuana, third offense. The trial court properly used this conviction as a predicate conviction and this assignment is without merit.

Assignment of Error No.8
Defendant next argues that the trial court failed to properly arraign him on the habitual offender bill of information because it failed to bring him before the court and inform him of the nature of the allegations in the habitual offender bill of information or of his right to be tried as to the truth therein; and, further, the trial court failed to require him to say whether the allegations therein were true. La. R.S. 15:529.1(D).
We find no merit to this assignment. The April 8, 1998 sentencing transcript on Defendant's February 1998 simple burglary contains an arraignment on the habitual offender bill:
By the State: We have one more Your Honor. We filed an Amended Bill of Information regarding an habitual offender bill and I believe the defendant at this time needs to answer that bill as a regular arraignment....

*731 By the Court: ... Are you prepared, Mr. Garner at this time?
By Mr. Garner: Your Honor, my client recognizes his right under paragraph D of the Habitual Offender Statute to maintain a silence in response to that charge which I believe the statute provides a way for the Court to record that and proceed from there.
By the Court: Okay. That means not guilty. He has not admitted, in other words, is that what we are talking about?
By Mr. Garner: That's correct.
Thus, Defendant was arraigned on the habitual offender bill of information and was permitted to plead not guilty by his silence to the allegations contained therein. Furthermore, it is too late for Defendant to complain of this irregularity because he waived it by proceeding in the habitual offender hearing. La.C.Cr.P. art. 555 provides in pertinent part:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
If there were any irregularities in the arraignment, Defendant waived them by allowing the matter to proceed. This assignment is without merit.

CONCLUSION
For the reasons stated herein, the conviction and sentence of Defendant, Terry Flanagan, are affirmed.
AFFIRMED.
NORRIS, C.J., concurs in the result.
NOTES
[1] This was found by this court not to be reversible error on appeal. See State v. Flanagan, 31,497 (La.App.2d Cir.12/9/98), 724 So.2d 817.
[2] Defendant was represented by James Beal in that matter.
[3] Mr. Garner informed the trial judge that he would remain in the vicinity should Defendant change his mind.
[4] In 1997, La.C.Cr.P. art. 556.1 was amended to require that the trial judge inform a defendant of the minimum and maximum penalty applicable to the charged offense in the taking of a guilty plea. The supreme court has determined that such advice was not required prior to the amendment in order for a defendant's plea to be knowing and voluntary. State v. Anderson, 98-2977 (La.1999), 732 So.2d 517; State v. Gaar, 32,243 (La.App.2d Cir.8/18/99), 746 So.2d 41.