| STATE OF LOUISIANA | * | NO. 2019-KA-0440 |
| --- | --- | --- |
| VERSUS | * | COURT OF APPEAL |
| NYTILEX JONES | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

*DLD*

**DYSART, J., DISSENTS, WITH REASONS**

I respectfully dissent from the majority opinion, as I find that the defendant, Nytilex Jones, manipulated and undermined the judicial process in an attempt to avoid conviction for a particularly heinous and cold-blooded murder.

The record indicates that both trial court judges who handled this matter were aware of the defendant's history and his previous attempts to avoid prosecution. For example, while this matter was pending in Division "C" of Criminal District Court, the defendant fired several court-appointed attorneys, prompting the State to request a competency evaluation and hearing. At the hearing, at which Mr. Jones was represented by counsel, the doctors reported that the defendant refused to answer simple questions. The doctors testified that this lack of cooperation prevented them from doing a proper evaluation, although one doctor opined that the defendant was competent. Out of an abundance of caution, the trial court ordered a second evaluation, although it rejected the doctors' recommendation that the defendant be remanded to a psychiatric facility for further observation. The court stated that it believed the defendant was malingering. Mr. Jones then filed *pro se* a motion to suppress video evidence of the crime, questioning the authenticity of the evidence. The court explained to the defendant that it would not rule on his motion until his competency was determined.

A month later, a second hearing was scheduled, but Mr. Jones appeared without counsel having once again fired his court-appointed attorney. At the re-scheduled hearing, where the defendant appeared with counsel, both doctors testified that the defendant was competent to proceed to trial. The court warned the defendant to stop firing his attorneys or he would have to represent himself. Mr. Jones acknowledged that he understood the warning.

The morning of trial, counsel for the defendant filed a motion to recuse the trial judge, which was granted. The case was re-allotted to Section "K."

Despite his acknowledgment of the warning from the Section "C" judge, on November 21, 2017, Mr. Jones (who had already fired two attorneys since the transfer), told the court he wished to fire his latest attorney and to represent himself. The court questioned Mr. Jones further about self-representation, to which he replied, "I ain't representing myself neither. I got nothing to say about nothing." The court continued to question Mr. Jones in an attempt to determine his true wishes. Mr. Jones said he wanted an attorney, but not someone from the public defender's office. The court explained that he had no choice as he did not have the means to pay an attorney, and told the current attorney to appear or to have someone else from the public defender's office appear on November 28, 2017, to determine counsel.

On November 28, Mr. Jones again refused to have the public defender represent him at a competency hearing. The court explained that Mr. Jones' choices were to hire private counsel, accept a public defender or represent himself. Mr. Jones insisted that he would not represent himself because he was not a lawyer. He complained that all of the public defenders were complicit with the State in introducing an altered surveillance video. The court again explained that if Mr. Jones could not afford private counsel and refused a public defender, he was

effectively giving up his right to counsel.[1] The court ultimately declared that Mr. Jones had voluntarily waived his right to counsel, to which Mr. Jones replied he would attempt to hire one. The court allowed the latest public defender to withdraw, and proceeded to conduct a third competency hearing, receiving testimony from an expert hired by the public defender's office.

Dr. Sarah DeLand testified that in addition to examining the defendant, she had spoken with several of his prior attorneys, his mother and two sisters. Although she found him rational and informed as to the charges against him and the possible penalties, she nonetheless found him to suffer from paranoid delusions that would affect his ability to assist counsel. Dr. DeLand acknowledged the possibility that Mr. Jones was malingering, but based upon the fact that Mr. Jones received disability checks since his childhood, which she presumed were for mental health problems, she erred on the side of caution. The trial court accepted Dr. DeLand's recommendation that another competency commission be appointed.

Following the hearing, the trial court inquired of Mr. Jones' mother if the family could afford an attorney. She stated it could not. The trial court then informed Mr. Jones that he would be representing himself at the next hearing, to which Mr. Jones replied he did not want to represent himself.

On December 19, 2017, Drs. Richoux and Salcedo reported to the court that they had conducted another evaluation of Mr. Jones, and that he had refused to allow assistance from a public defender at the examination, and had refused to answer any of the doctors' questions. Dr. Richoux, who had now examined Mr. Jones several times, told the court that he reviewed his previous notes and Dr. DeLand's findings, and spoke to one of the former public defenders. He opined that Mr. Jones' concerns about the surveillance camera footage being altered could

_____

[1] Mr. Jones insisted that he had a right to a *pro bono* attorney from a law school. The record reflects that Loyola Law School had been involved in the case early on, but was fired by Mr. Jones. The court stated for the record that Tulane Law School was contacted, but was unable to handle the case.

be viewed as delusional, but admitted that it could also be "a purposeful attempt to delay legal proceeding," or simply "a massive form of denial." Dr. Richoux ultimately testified that in his opinion Mr. Jones did not suffer from any identifiable mental illness, and recommended that the defendant be considered competent to proceed to trial. The trial court accepted the recommendation,[2] and denied all subsequent counseled defense motions for competency hearings.

**Mr. Jones' objection to surveillance video:**

It is important to note that this writer viewed the video to which Mr. Jones objects, and reviewed Mr. Jones' testimony at trial. Mr. Jones explained that he knew the victim and another man, Chris Wells, for twenty years, having grown up in the same neighborhood. He testified that at 3 a.m. on the morning of the shooting, he was outside his house smoking a cigar when he observed Wells' vehicle nearby with two people inside. He did not call the police, because although he knew what "these people" were capable of, he still "goes around them."

Later that day, he traveled several miles to purchase a cigar at Jack's Meat Market, a neighborhood where Mr. Jones admitted the victim frequented. As he turned to leave the store, he saw Wells standing outside pointing a gun at the store, motioning to the victim. He knew these men had reputations for "selling drugs, robbing and killing." On cross-examination, he admitted that he could not see either occupant of the car that he observed outside his house earlier in the morning, but he did see the victim standing on the corner after the vehicle stopped. He further testified that despite his knowledge of the two men's reputation for violence, he did not feel in danger until the victim pointed a gun at him. That is

---

[2] A minute entry indicates that the trial court found Mr. Jones competent to stand trial. However, the transcript does not indicate that the court made any ruling.

when he wrestled the gun away from the victim and shot him. He said he threw the gun under a nearby house and left the scene in his own vehicle.

The video footage captured from two different cameras and vantage points, shows Mr. Jones enter Jack's Meat Market, purchase a cigar, exit the store, remove a black handgun from his waistband and put it in his pants pocket. Mr. Jones crosses the street and approaches the victim. He then pulls the gun from his pocket and chases the victim while shooting at him. After the victim falls to the ground, Mr. Jones stands over him and shoots him again in the head. There was no evidence introduced at any point in these proceedings to indicate that any of the video footage was altered.

Considering the unrefuted video evidence and Mr. Jones' trial testimony, it is clear to this writer that Mr. Jones' protestations about the use of the video and his feigned paranoia is his effort to prevent his prosecution for a cold-blooded, pre-meditated murder.

**Right to counsel:**

Although it is undisputed that the Sixth Amendment to the U.S. Constitution and Article I, §13 of the Louisiana Constitution guarantee assistance of counsel in one's defense, and the appointment of counsel if indigent, *State v. Garcia,* 09-1578, p. 37 (La. 11/16/12), 108 So.3d 1, 28, that right is not absolute. A defendant does not have a right to have a particular attorney appointed to represent him. "An indigent's right to choose his counsel only extends so far as to allow the accused to retain counsel of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice." *State v. Barker,* 17-, 0469, p. 51 (La.App. 4 Cir. 5/30/18), ___ So.3d. ___, *writ denied,* 18-0968 (La. 3/18/19), 267 So.3d 85, *reconsideration not considered,* 18-

0968 (La. 9/6/19), 278 So.3d 361 (citing *State v. Leger*, 05-0011), p. 43 (La. 7/10/06), 936 So.2d 108, 142; *see also State v. Wille,* 595 So.2d 1149, 1154 (La. 1992)("An indigent defendant is entitled to the appointment of competent counsel, but is not entitled to choose or decline a particular attorney.").

In this case, Mr. Jones was incapable of hiring private counsel, therefore his right to counsel was limited to appointments by the court. Although he argues that his express refusal to represent himself (he did so on several occasions by filing *pro se* motions), should have prevented the court from finding he validly waived his right to counsel, the Louisiana Supreme Court has recognized "that a defendant could waive his right to the assistance of counsel by his actions even if his verbal protestations were to the contrary." *State v. Harper*, 381 So.2d 468, 471 (La. 1980).

In *Harper, supra,* the defendant filed numerous *pro se* motions and refused further representation by a public defendant, but instead demanded that an attorney from the American Civil Liberties Union be appointed. The trial court explained that the defendant could either accept his appointed counsel or hire private counsel. After the defendant rejected both options, the court proceeded to trial with the unrepresented defendant. As in *Harper,* Mr. Jones argues that forcing him to proceed *pro se* deprived him of his Sixth Amendment right to counsel. *Harper, supra* at 469-70.

The Supreme Court framed the issue as "whether the trial court erred in presenting the defendant with a choice of accepting the assistance of appointed counsel or proceeding *pro se*, and then forcing him to go to trial after rejecting both alternatives. The Court reasoned:

> In this case there can be no doubt that the defendant knew of his right to the assistance of court appointed counsel. Such appointed counsel did in fact assist the defendant in preliminary matters. Counsel was available to the defendant at trial and the court made it clear to the defendant that Mr. McConnell was present at trial in order

> to give him whatever assistance he requested. The defendant chose to forego that assistance. After a careful examination of the record we conclude that the defendant's decision was made with the knowledge that appointed counsel was readily available to him. The refusal of the defendant to accept the assistance of appointed counsel was a knowing and voluntary waiver of his right to the assistance of counsel.

*Id.* at 471.

The Supreme Court ultimately held that "[i]n the absence of any sound reasons for disqualification of the appointed attorney … the [trial] court had no duty to appoint another attorney to represent the defendant," and that "the defendant's refusal without good cause to proceed with able appointed counsel amounted to a waiver of his right to counsel," notwithstanding his express declination to represent himself. *Id.*

A defendant's failure to secure his own counsel and refusal to accept court-appointed counsel may result in an implied waiver of his right to counsel. *See State v. Crawford,* 520 So.2d 950, 952 (La. 1987). In *Crawford,* the defendant demanded removal of his first two public defenders and argued on appeal that the trial court erred in failing to appoint another attorney in the absence of a knowing and intelligent waiver of his right to counsel. *Id.* At 951-52. The Supreme Court noted the lack of sufficient colloquy between the court and the defendant regarding defendant's literacy, competency, understanding, and volition, and the dangers of self-representation, but stated, "the issue is not whether the defendant made a valid waiver. The issue is whether a defendant having had two attorneys appointed to represent him, is entitled to the appointment of a third attorney when he expresses his dissatisfaction with the second." *Id.* At 952. The Court stated that "[a]bsent a valid waiver, defendant was entitled to and <u>did</u> receive the assistance of appointed

counsel," and, absent a showing of inadequacy or ineptness on the part of appointed counsel, the defendant was not entitled to another appointed attorney.[3]

In my opinion, the trial court in this matter sufficiently discharged its duty to provide Mr. Jones with representation pursuant to the Sixth Amendment by appointing a competent attorney(s) to represent him. The only reason Mr. Jones asserted for his dissatisfaction with his representation was that the attorneys disagreed with his theory that the surveillance video the State provided in discovery had been reconstructed. Absent any showing that the appointed attorney was incompetent or inept, the court was not obligated to appoint another attorney. *See Barkerm* 17-0469, at p. 51 ("[Defendant] then proceeded to create a conflict with every court-appointed attorney (by naming them in his lawsuit) until he received private *pro bono* counsel. We cannot and do not sanction such tactical maneuvers.")

The record abundantly confirms that both trial court judges determined that Mr. Jones' refusal to accept counsel (and to some extent his issue with the surveillance video) constituted an attempt to delay the proceedings and obstruct the orderly administration of justice. It is also clear that the assistance of counsel was repeatedly offered and refused. Thus, considering the totality of the circumstances, I do not find that Mr. Jones was deprived of his constitutional right to assistance of counsel and his first trial, or at the third and fourth competency hearings. *See State ex rel. Johnson v. Maggio*, 449 So.2d 547, 549-50 (La. Ct. App. 1984), *writ denied sub nom. State v. Johnson*, 450 So.2d 354 (La. 1984)(finding a valid waiver of the right to counsel under the totality of the circumstances, when representation was

---

[3] *See also State v. Flanagan*, 32,535, pp. 9-10 (La.App. 2 Cir. 10/29/99), 744 So.2d 718, 725 ("The question presented in the case *sub judice* is whether the trial judge erred in presenting Defendant with a choice of accepting the assistance of counsel, or proceeding pro se, and in requiring Defendant to proceed with the hearing on the habitual offender bill after he rejected both.")

offered and refused, and where the court found defendant's actions were an attempt to manipulate the proceedings).

Thus, for all of the above reasons, I find that the trial court did not deny Mr. Jones the right to counsel at either competency hearings or trial. Rather, Mr. Jones' refusal to accept appointed counsel impliedly constituted a valid waiver of his right to counsel.

Accordingly, I dissent from the majority opinion.